Victor M. Felix, SBN 179622
Victor.Felix@procopio.com
PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Tel. (619) 515-3229
Fax (619) 744-5409

Leslie V. Payne (TX Bar No. 00784736) (*Pro Hac Vice*)
lpayne@hpcllp.com
Eric J. Enger (TX Bar No. 24045833) (*Pro Hac Vice*)
eenger@hpcllp.com
Christopher M. First (TX Bar No. 24095112) (*Pro Hac Vice*)
cfirst@hpcllp.com
HEIM, PAYNE & CHORUSH LLP
1111 Bagby St., Suite 2100
Houston, TX 77002
T: (713)221-2000  F: (713)221-2021

Attorneys for Plaintiffs *Wi-LAN*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WI-LAN INC.; WI-LAN USA, INC.; & WI-LAN LABS, INC.,<br><br>                              Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS, INC.;<br>LG ELECTRONICS U.S.A., INC.;<br>LG ELECTRONICS MOBILECOMM<br>U.S.A., INC.,<br><br>                              Defendants. | Case No.:  3:18-cv-01577-H-AGS<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' INFECTIOUS UNENFORCEABILITY CLAIMS** |

# TABLE OF CONTENTS

I.      Introduction ................................................................................................ 1

II.     Background ................................................................................................. 2

        A.   The Patent Family ........................................................................... 2

        B.   Documents Submitted During Prosecution ..................................... 3

        C.   LG's Claims .................................................................................... 7

III.    LG Cannot Show the '435 Patent was Procured Through Inequitable
Conduct ............................................................................................................... 8

        A.   LG Cannot Show a Misrepresentation or Omission in the '581 App. ........... 8

        B.   LG Cannot Show But-For Materiality ............................................ 9

        C.   LG Has Not Pleaded, and Cannot Show, Specific Intent to Deceive .......... 10

IV.     LG Misstates the Doctrine of Infectious Unenforceability and Cannot Show
that the '351 Patent is Unenforceable ................................................................. 12

V.      LG's Pleading Lacks the Required Specificity ................................................. 14

VI.     The Court May Treat This Motion as One for Summary Judgment ........... 16

# TABLE OF AUTHORITIES

## Cases

*Agfa Corp. v. Creo Products Inc.*,
451 F.3d 1366 (Fed. Cir. 2006) ................................................................. 13

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
310 F. Supp. 2d 638 (D. Del. 2004) ........................................................... 7

Arthrocare Corp. v. Smith & Nephew, Inc.,
406 F.3d 1365 (Fed. Cir. 2005) ................................................................. 7

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................... 8, 12

*Avid Identification Sys., Inc. v. Crystal Imp. Corp.*,
603 F.3d 967 (Fed. Cir. 2010) ................................................................. 14

*Burlington Indus., Inc. v. Dayco Corp.*,
849 F.2d 1418 (Fed. Cir. 1988) ............................................................... 14

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
417 F. Supp. 2d 580 (D. Del. 2006) ......................................................... 13

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
480 F.3d 1129 (Fed. Cir. 2007) ............................................................... 13

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ................................................... 10, 14, 15

*Fox Indus., Inc. v. Structural Preservation Sys., Inc.*,
922 F.2d 801 (Fed. Cir. 1990) ................................................................. 12

*Glob. Tech Led, LLC v. Hilumz Int'l Corp.*,
2017 WL 588669 (M.D. Fla. Feb. 14, 2017) ........................................... 13

*Machines Corp. v. Priceline Grp. Inc.*,
2017 WL 1349175 (D. Del. Apr. 10, 2017) ............................................. 15

*Nilssen v. Osram Sylvania, Inc.*,
440 F. Supp. 2d 884 (N.D. Ill. 2006) ...................................................... 13

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
   537 F.3d 1357 (Fed. Cir. 2008)............................................................11
*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011).......................................8, 9, 10, 11

   **Other Authorities**

35 U.S.C. §371(c) ...................................................................................3

   **Rules**

FED. R. CIV. P. 12(c).............................................................................16

FED. R. CIV. P. 12(d).............................................................................16

## I.    Introduction

LG has not alleged that the '351 Patent-in-suit was procured through inequitable conduct. Indeed, it was not. Instead, LG relies on the obscure doctrine of "infectious unenforceability." Invoking that seldom used theory, LG contends that the '351 Patent is unenforceable because of inequitable conduct allegedly committed as part of the prosecution of a great-great-grandparent patent application that issued 11 years before the '351 Patent.

LG's infectious unenforceability claims lack support in either fact or law. For the reasons below, Wi-LAN requests the Court dismiss LG's infectious unenforceability claims under FED. R. CIV. P. 12(c), or in the alternative, grant summary judgment in favor of Wi-LAN under FED. R. CIV. P. 12(d).

*First*, LG supports its claims with factual allegations that are demonstrably false. LG's claims hinge on an alleged withholding of material information. But the prosecution history shows that the applicant expressly disclosed the allegedly withheld information to the PTO as part of filing great-great-grandparent and again for all subsequent applications, including for the '351 Patent.

*Second*, LG cannot show the but-for materiality required to support a claim of inequitable conduct. Because the applicant actually disclosed the information to the PTO, LG cannot show that the PTO would not have allowed a claim had it been aware of the allegedly undisclosed information.

*Third*, LG cannot show the specific intent required to support a claim of inequitable conduct. LG relies on the (incorrect) allegation that material information was knowingly withheld. But as a matter of law, the mere fact that information later found material was not disclosed cannot—by itself—satisfy the deceptive intent element of inequitable conduct.

*Fourth*, LG misstates the law of infectious unenforceability. Even if LG's inequitable conduct claims as to the '351 Patent's great-great-grandparent were plausible (they are not), LG's allegation that a breach in the duty of candor in an earlier application

"renders unenforceable all patent claims eventually issuing from the same or a related application" is not the law. LG does not plead facts sufficient to support a finding of infectious unenforceability under the correct legal standard.

***Finally***, LG's pleading lacks the specificity required by FED. R. CIV. P. 9(b). Because LG's claim alleges a fraud on the PTO, it must plead the "who, what, where, when, and why" of its claims with specificity. LG does not, and cannot, support its claims with the required level of factual specificity.

For at least these reasons, the Court should dismiss LG's inequitable conduct counterclaims.

## II.   Background

### A. The Patent Family

U.S. Patent App. No. 14/292,380 was filed on May 30, 2014, and eventually issued as U.S. Patent No. 8,867,351 ("the '351 Patent"). Wi-LAN's infringement allegations here are based in part on the '351 Patent. The '351 Patent claims priority through a chain of other applications. The '351 Patent's great-great-grandparent was U.S. Patent No. 7,333,435 ("the '435 patent"):





The '435 Patent began as a "National Stage" application under 35 U.S.C. §371: U.S. Patent App. No. 10/521,581 (the "'581 app."), derived from International App. No. PCT/CA2003/001043 (the "PCT App."). In the United States, a "National Stage" application is a U.S. patent application based on an earlier international patent application made under the Patent Cooperation Treaty ("PCT"). As part of a "National Stage" application filing, an applicant files a copy of the international (PCT) application with the PTO. *See* 35 U.S.C. §371(c).

### B.  Documents Submitted During Prosecution

As part of the earlier prosecution of the PCT App., an International Search Report ("Search Report") was issued that identified U.S. Patent Pub. No. 2002/032788 to

Emanuel ("Emanuel") as a reference that may affect patentability of several claims sought in the PCT App. The Search Report also identified several family members of Emanuel, under the column titled "Patent family member(s)," which listed foreign counterparts "EP 1168753 A1," "AU 5178101 A," "CN 1330359 A," and "JP 2002044151 A."

As part of the United States National Stage application (the '581 app., which later issued as the '435 Patent), the applicant provided a copy of the PCT App. to the PTO, along with a copy of the Search Report. The Search Report is physically present in the prosecution history of the '435 Patent and identifies Emanuel as the first reference on the first page:



Ex. A ('435 File History) at 113-115 (highlighting added for emphasis).

1      In addition to disclosing Emanuel, the Search Report also identifies the "Patent

2 family members" of Emanuel:



*Id.* (highlighting added for emphasis).

      In addition, other PTO documents confirm that the PTO received the Search

Report:

1  Ex. A ('435 File History) at 37-38 (highlighting added for emphasis). And the initial

2  checklist used by the PTO shows that the references from the Search Report (*e.g.*,

3  Emanuel and its foreign counterparts) were also present in the application file:



20  Ex. A ('435 File History) at 110 (highlighting added for emphasis).

21      In addition to submitting the Search Report citing Emanuel and its foreign

22  counterparts, and the Emanuel reference itself as part of the '581 app., the applicant also

23  submitted those materials to the PTO as part of the prosecution of the '351 Patent.

24  Indeed, the face of the '351 Patent shows that not only were these materials submitted to

25  the PTO, but they listed on the face of the patent:

**US 8,867,351 B2**

Page 2

**Related U.S. Application Data**

No. 13/468,925, filed on May 10, 2012, now Pat. No. 8,630,238, which is a continuation of application No. 12/028,365, filed on Feb. 8, 2008, now Pat. No. 8,184,661, which is a continuation of application No. 10/521,581, filed as application No. PCT/CA03/01043 on Jul. 11, 2003, now Pat. No. 7,333,435.

(56)     **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,771,653 | B1 | 8/2004 | Le Pennec et al. |
| 6,845,100 | B1 | 1/2005 | Rinne |
| 7,406,098 | B2 | 7/2008 | Taneja et al. |
| 7,474,668 | B2 | 1/2009 | Bauman et al. |
| 7,734,796 | B2 * | 6/2010 | Schelen et al. ............... 709/229 |
| 8,184,661 | B2 | 5/2012 | Gerkis |
| 2002/0032788 | A1 | 3/2002 | Emanuel et al. |
| 2002/0132611 | A1 | 9/2002 | Immonen et al. |
| 2003/0067903 | A1 | 4/2003 | Jorgensen |
| 2003/0186724 | A1 | 10/2003 | Tsutsumi et al. |

| | | | |
|---|---|---|---|
| 2004/0013089 | A1 | 1/2004 | Taneja et al. |
| 2004/0017825 | A1 | 1/2004 | Stanwood et al. |
| 2004/0081093 | A1 | 4/2004 | Haddock et al. |
| 2004/0156354 | A1 | 8/2004 | Wang et al. |
| 2004/0248583 | A1 | 12/2004 | Satt et al. |
| 2005/0157678 | A1 * | 7/2005 | Mantha et al. ............... 370/329 |
| 2005/0185651 | A1 | 8/2005 | Rinne |
| 2006/0120285 | A1 | 6/2006 | Pathak et al. |
| 2010/0157928 | A1 * | 6/2010 | Spinar et al. ............... 370/329 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | 0201758 A1 | 1/2002 |
| WO | 2004008698 A2 | 1/2004 |

OTHER PUBLICATIONS

International Search Report for related PCT/CA03/01043, mailed on Feb. 18, 2004, in 5 pages.

Passas et al. "Quality-of-Service Oriented Medium Access Control for Wireless ATM Networks." Communication Networks Laboratory, Department of Informatics, University of Athens. 1997. 23 pages.

* cited by examiner

(Highlighting added for emphasis).

The applicant also submitted the Search Report citing Emanuel and its foreign counterparts, as well as Emanuel itself, for every other patent application in the chain: the '351 Patent's parent (the '805 Patent), grandparent (the '238 Patent), and great-grandparent (the '661 Patent).

### C. LG's Claims

LG does not allege that the '351 Patent was procured through inequitable conduct. Indeed, because the Search Report and Emanuel were provided to the PTO during prosecution of the application that resulted in the '351 Patent, no inequitable conduct claim could lie. Similarly, LG does not allege that any other patent in the family[1] was procured through inequitable conduct.

Instead, LG's claims are based on a theory of "infectious unenforceability," a doctrine "disfavored even more than charges of inequitable conduct." *Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 675 (D. Del. 2004), *aff'd in part, vacated in part, remanded*, 406 F.3d 1365 (Fed. Cir. 2005). LG's claims date back 11 years, alleging

---

[1] *I.e.*, the '351 Patent's parent (the '805 Patent), grandparent (the '238 Patent), and great-grandparent (the '661 Patent).

inequitable conduct committed as part of the prosecution of the '435 Patent—the '351 Patent's great-great-grandparent.

Though its pleading is inconsistent (*see infra*), LG claims that during the prosecution of the '435 Patent, the applicant withheld the Search Report, Emanuel, Emanuel's foreign counterparts, and two examination reports addressing Emanuel.[2] As shown above, LG's claims are based on facts that are demonstrably false. The prosecution history of the '435 Patent shows the applicant disclosed the Search Report, Emanuel, and Emanuel's foreign counterparts to the PTO on the very same day the application was filed.

## III. LG Cannot Show the '435 Patent was Procured Through Inequitable Conduct

A finding of inequitable conduct requires proof of two distinct elements by clear and convincing evidence. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011). First, the proponent of inequitable conduct must show that a specific individual made a misrepresentation or omission of a material fact. *Id*. Second, the proponent of inequitable conduct must also show that the individual did so with the specific intent to deceive the Patent and Trademark Office. *Id*. at 1290.

### A. LG Cannot Show a Misrepresentation or Omission in the '581 App.

In the context of a motion to dismiss, the Court must take all well-pleaded facts as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). But LG's pleading is unclear on the facts underpinning its inequitable conduct claims.

For example, LG first acknowledges that "on January 18, 2005, the Named Inventor, SOMA, and Counsel submitted to the PTO a copy of the priority '373 app. and

---

[2] The two foreign examination reports contain rejections of the foreign claims over Emanuel on the same basis as suggested by the Search Report. LG does not allege these documents are relevant for any reason other than their discussion of Emanuel. Even if it had, it is clear these materials are cumulative, as they contain no material information beyond what is present in Emanuel and the Search Report.

PCT App., along with a copy of the Search Report."[3] Answer at par. 215. This is correct. The applicant submitted the full PCT App.—*along with the Search Report citing Emanuel and its foreign counterparts*—as part of the '581 App., which issued as the '435 Patent. *See infra*.

Yet in the same section, LG hinges its inequitable conduct allegation on the premise that "[t]he Named Inventor, SOMA, and Counsel actually knew of, but did not disclose, the Search Report, Emanuel, the patent family members of Emanuel, the First Examination Report, and the Second Examination Report during the prosecution of the '435 patent." Answer at par. 241. As shown by LG's own admissions in its pleading—in the very same section no less—this is not accurate.

The actual facts are not reasonably in dispute. The prosecution history shows the applicant disclosed and provided the Search Report to the PTO on January 18, 2005 as a part of the '581 app., which later issued as the '435 Patent. Ex. A ('435 File History) at 113-115. *See supra* at Section II(B) for more detail.

LG's repeated statements that the Search Report citing Emanuel and its foreign counterparts were withheld from the PTO during prosecution of the '435 Patent are inexplicable. When asked by Wi-LAN to withdraw its incorrect claims, LG refused to revisit its pleading and instead threatened to seek fees and costs if Wi-LAN sought court intervention.

### B.   *LG Cannot Show But-For Materiality*

In *Therasense,* the Federal Circuit held that "the materiality required to establish inequitable conduct is but-for materiality." 649 F.3d at 1291. In other words, "[w]hen an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id*. LG cannot meet this demanding standard.

---

[3] As shown above, the Search Report lists Emanuel and its foreign family members.

1    Unlike most inequitable conduct allegations based on some amount of speculation,

2  the Court need not reconstruct a hypothetical "but-for" world here. The applicant

3  disclosed the Search Report, Emanuel, and the patent family members of Emanuel to the

4  PTO on the same day the application was filed. As a result, there is no question about

5  whether "the PTO would not have allowed a claim had it been aware of the undisclosed

6  prior art." *Therasense, Inc,* 649 F.3d 1276, 1291. We know that the PTO *did* allow the

7  claims *despite* the disclosure of these materials.

8    Further, to the extent that LG's claim for infectious unenforceability relies on the

9  fact that the claims of the '351 Patent (and the other patents in the chain) bear similarities

10 to the '435 Patent, this further erodes LG's claim of but-for materiality. Even if the PTO

11 had not been aware of the Search Report, Emanuel, and its foreign counterparts (it was),

12 the fact that the PTO allowed four other related applications in the chain despite the

13 disclosure of the Search Report and Emanuel undercuts the suggestion that the PTO

14 would not have allowed the claims of the '435 Patent based on Emanuel and the related

15 materials.

16    Because LG has not (and cannot) plead facts sufficient to support a finding of but-

17 for materiality that is plausible on its face, LG's inequitable conduct claim must fail.

18    C.    *LG Has Not Pleaded, and Cannot Show, Specific Intent to Deceive*

19    In addition to showing materiality, a party asserting inequitable conduct must show

20 that the person withholding material information "withheld or misrepresented this

21 information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart*

22 *Stores, Inc.*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009). As shown above, LG cannot meet

23 the materiality prong, so its allegations fail here as well. Even if LG could show

24 materiality, it has not pleaded enough facts to suggest that any individual acted with the

25 specific intent to deceive the PTO.

26    Deceptive intent must be shown "by clear and convincing evidence that the

27 applicant knew of the reference, knew it was material, and made a deliberate decision to

28 withhold it" to deceive the PTO. *Therasense*, 649 F.3d at 1290. And while LG need not

prove its claim at the pleading stage, because it is a fraud allegation, LG must plead facts sufficient to support a plausible inference of deceptive intent. *Exergen,* 575 F.3d at 1328-29. To do so, the facts pleaded by LG must support a plausible inference of deceptive intent that is "'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F.3d at 1290 (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

LG bases its intent allegations solely on the alleged materiality of the information at issue, contending that various parties "intentionally chose not to disclose those references during prosecution of the '435 patent despite having knowledge of those references and knowledge of their relevance to each and every independent claim of the '435 patent (and any claims that depend from those independent claims)." Answer at par. 252; *see also* id. at par. 253, 254, 255.

But "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense,* 649 F.3d at 1290 (citing *Star*, 537 F.3d at 1366 ("the fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct").

LG pleads no facts, and offers *nothing* beyond mere conclusions, to suggest that any party here acted with the specific intent to deceive the PTO. LG contends only that the information was material, and that it was knowingly withheld. *See* Answer at par. 252-55. Even if true (it is not), this is not enough to support an inference of deceptive intent. *Therasense,* 649 F.3d at 1290; *Star*, 537 F.3d at 1366.

Moreover, the fact that the applicant here submitted the Search Report (listing Emanuel and its foreign counterparts) with the filing of the application, and all subsequent applications, establishes that the applicant was not acting with deceptive intent—to the contrary, it undercuts that allegation. Thus, LG cannot possibly show that deceptive intent is the "single most reasonable inference" to be drawn from the facts it has pleaded.

Because LG has not plead enough facts to support a claim of inequitable conduct that is "plausible on its face," its claims must be dismissed. *Iqbal*, 556 U.S. at 678.

## IV. LG Misstates the Doctrine of Infectious Unenforceability and Cannot Show that the '351 Patent is Unenforceable

Because the applicant disclosed the Search Report citing Emanuel and its foreign counterparts as part of the prosecution of the '351 Patent, LG must stretch beyond a simple inequitable conduct claim. Instead, LG relies on a disfavored "infectious unenforceability" theory, alleging unenforceability of the '351 Patent based on alleged inequitable conduct in the '351 Patent's great-great-grandparent patent application, the '435 Patent.

LG cannot show that the alleged inequitable conduct from the '581 application (the great-great-grandparent of the '351 patent) infects the '351 patent. LG's bases its theory on the simple relationship between the patents:

> The '351 patent is unenforceable under the doctrine of infectious unenforceability because the '351 patent claims priority and/or is related to the '435 patent. At a minimum, to the extent that Wi-LAN asserts that the '351 patent is related to and/or entitled to the priority filing date of the '435 patent, any inequitable conduct that renders the '435 patent unenforceable also renders the '351 patent unenforceable via infectious unenforceability and/or unclean hands.

Answer at par. 193.

In an effort to support its infectious unenforceability theory, LG's answer misstates the underlying law:

> 256. A breach of the duty of candor early in the prosecution of a patent application renders unenforceable all patent claims eventually issuing from the same *or a related applications. See e.g., Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990).

Answer at 81 (emphasis in original). This is false. In fact, *Fox Industries* says that "a breach of the duty of candor early in the prosecution **may** render unenforceable all claims

1  which eventually issue from the same or a related application." 922 F.2d 801, 804 (Fed.
2  Cir. 1990) (emphasis added to omitted word).

3      LG had to misstate *Fox Industries* because many cases hold that mere relation back
4  is not enough to find infectious unenforceability. *See, e.g., eSpeed, Inc. v. Brokertec USA,*
5  *L.L.C.,* 417 F. Supp. 2d 580, 79 U.S.P.Q.2d 1258, 1269 (D. Del. 2006), *aff'd,* 480 F.3d
6  1129 (Fed. Cir. 2007) ("[I]nequitable conduct in a patent application does not
7  automatically render unenforceable all of the claims of all later issued patents in the same
8  chain."); *Glob. Tech Led, LLC v. Hilumz Int'l Corp.*, No. 2:15-CV-553-FTM-29CM,
9  2017 WL 588669, at *11 (M.D. Fla. Feb. 14, 2017) (dismissing infectious
10 unenforceability claim that "improperly rest[ed]…on nothing more than the parent-child
11 relationship between the [patents]"); *Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d
12 884, 900 (N.D. Ill. 2006) ("mere similarity in subject matter, mere citation to the
13 unenforceable patent, and sharing a patent application are insufficient to invalidate a
14 patent issued from a chain of applications in which inequitable conduct has been found as
15 to an application within that chain.") (citing numerous cases).

16     Indeed, a proponent of an infectious unenforceability claim must show inequitable
17 conduct in an earlier application (absent here) and *also* show that the earlier inequitable
18 conduct has an "immediate and necessary relation" to the claims of the later patent.
19 *eSpeed, Inc.* 417 F. Supp. 2d at 580 (to find infectious unenforceability, "the inequitable
20 conduct that occurred earlier in the chain 'must be related to the targeted claims of the
21 ultimately-issued patent or patents sought to be enforced…'"), *aff'd,* 480 F.3d 1129 (Fed.
22 Cir. 2007); *Agfa Corp. v. Creo Products Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006).

23     LG pleads a conclusion that there is "an immediate and necessary relation"
24 between "the '351 patent" and the alleged inequitable conduct but provides no factual
25 basis to support that conclusion beyond contending that the '351 Patent and '435 patent
26 "have similar specifications and relate to similar subject matters" and share a title. *See*
27 Answer at par. 257-58. As shown above, this is insufficient, and the Court should dismiss
28 LG's infectious unenforceability claim.

## V.   LG's Pleading Lacks the Required Specificity

Even if there were a viable claim somewhere among LG's allegations, LG failed to plead its allegations with the required level of specificity. To begin with, inequitable conduct is a serious allegation that should not be taken lightly. The Federal Circuit summarized:

> We add one final word: the habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps. They get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account. They destroy the respect for one another's integrity, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself. A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice.

*Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). Because inequitable conduct is a serious fraud claim, pleadings asserting it must meet the particularity requirements of Fed. R. Civ. P. 9(b). *Id.*

In *Exergen Corp. v. Wal-Mart Stores, Inc.*, the Federal Circuit held that "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." 575 F.3d 1312, 1327 (Fed. Cir. 2009). LG's inequitable conduct claim violates this rule.

LG fails to identify the "who" in its inequitable conduct claim. LG's allegations are based on the alleged actions of "the Named Inventor, SOMA, and Counsel." *See generally* Answer at 54-82.

To start, "only individuals, rather than corporations ... owe a duty of candor to the PTO." *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 974 n.1 (Fed. Cir. 2010) (*citing Exergen*, 575 F.3d at 1328). So any inequitable conduct allegations

based on activities of an organization or ill-defined group (for example, "SOMA, and Counsel") are improper on their face and must be dismissed.

Moreover, an inequitable conduct pleading must name a specific individual "who both knew of the material information and deliberately withheld or misrepresented it." *Id*. (emphasis added). LG defines the term "Named Inventor" as Mr. Anthony Gerkis, who is a specific individual.

But simply naming an individual is not enough where "there are not sufficient facts pleaded to establish, *inter alia*, that the 'named inventors' or 'prosecuting attorneys' (other than [a specifically named prosecuting attorney]) actually had knowledge" of the material information **and** deliberately withheld it. *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, No. CV 15-137, 2017 WL 1349175, at *9 (D. Del. Apr. 10, 2017). LG pleads no facts to support a finding that Mr. Gerkis actually knew about the allegedly withheld information and understood the alleged materiality of that information. And LG pleads no facts to support a finding that Mr. Gerkis—armed with this knowledge and understanding—deliberately withheld the Search Report citing Emanuel and its foreign counterparts with the intent to deceive the PTO.

Additionally, LG's pleading fails to specify the "what," "where," and "why" required to support a fraud claim under FED. R. CIV. P. 9(b). LG's counterclaim "fails to identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found—i.e., the 'what' and 'where' of the material omissions." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009).

Finally, LG's counterclaim alleges "materiality," but "does not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Id*. These specific allegations are "necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id*. at 1329-30.

Because LG has failed to plead inequitable conduct with the factual specificity required by FED. R. CIV. P. 9(b), the Court should dismiss those claims.

## VI. The Court May Treat This Motion as One for Summary Judgment

The inconsistencies and legal flaws in LG's argument are enough to require dismissal under FED. R. CIV. P. 12(c). But if the Court believes that consideration of matters outside the pleadings are necessary (*e.g.*, the '435 Patent file history) to decide this Motion, Wi-LAN requests that the Court apply FED. R. CIV. P. 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

No matter if the Court treats this as a motion to dismiss or a motion for summary judgment, LG's claims fail and should be rejected by the Court.

For the reasons above, the Court should dismiss LG's infectious unenforceability counterclaims on the '351 Patent, or in the alternative, grant summary judgment on those claims in favor of Wi-LAN.

Dated: February 27, 2019

Respectfully Submitted,

By: */ Christopher M. First /*
Leslie V. Payne
TX. Bar No. 00784736 (admitted *pro hac vice*)
lpayne@hpcllp.com
Eric J. Enger
TX. Bar No. 24045833 (admitted *pro hac vice*)
eenger@hpcllp.com
Christopher M. First
TX. Bar No. 24095112 (admitted *pro hac vice*)
cfirst@hpcllp.com
Heim, Payne & Chorush LLP
1111 Bagby St., Suite 2100
Houston, TX 77002
T: (713)221-2000  F: (713)221-2021

Victor M. Felix, SBN 179622
Victor.Felix@procopio.com
PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Tel. (619) 515-3229
Fax (619) 744-5409

Attorneys for Plaintiffs *Wi-LAN.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2019, I served **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' INFECTIOUS UNENFORCEABLITY CLAIMS** via ECF on the following:

| | |
|---|---|
| Joseph S. Leventhal<br>Dinsmore & Shohl LLP<br>655 West Broadway, Suite 840<br>San Diego, CA 92101<br>joseph.leventhal@dinsmore.com | Richard D. Harris<br>James J. Lukas, Jr.<br>Greenberg Traurig, LLP<br>77 West Wacker Drive, Suite 3100<br>Chicago, IL 60601<br>harrisr@gtlaw.com<br>lukasj@gtlaw.com |

By:   _/ Christopher M. First /_
Christopher M. First