# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WI-LAN INC.; WI-LAN USA, INC.; and WI-LAN LABS, INC., | Case No.: 18-cv-01577-H-BGS |
| Plaintiffs, | **ORDER:** |
| v. | **(1) DENYING PLAINTIFFS' RULE 12(c) MOTION TO DISMISS DEFENDANTS' ANTITRUST AND UNFAIR COMPETITION COUNTERCLAIMS; AND** |
| LG ELECTRONICS, INC.; LG ELECTRONICS U.S.A., INC; and LG ELECTRONICS MOBILECOMM U.S.A., INC., | |
| Defendants. | [Doc. No. 56.] |
| | **(2) GRANTING PLAINTIFFS' RULE 12(c) MOTION TO DISMISS DEFENDANTS' UNENFORCEABILITY COUNTERCLAIM** |
| | [Doc. No. 61.] |

On February 1, 2019, Plaintiffs Wi-LAN Inc., Wi-LAN USA, Inc., and Wi-LAN Labs, Inc. filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) to dismiss Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc.,

and LG Electronics Mobilecomm U.S.A., Inc.'s antitrust and unfair competition counterclaims.  (Doc. No. 56.)  On February 22, 2019, LG filed its response in opposition to Wi-LAN's motion related to its antitrust and unfair competition counterclaims.  (Doc. No. 60.)  On March 1, 2019, Wi-LAN filed its reply.  (Doc. No. 62.)

On February 27, 2019, Plaintiffs filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) to dismiss LG's infectious unenforceability counterclaim.  (Doc. No. 61.)  On March 25, 2019, LG filed its response in opposition to Wi-LAN's motion related to its infectious unenforceability counterclaim. (Doc. No. 74.)  On April 1, 2019, Wi-LAN filed its reply.  (Doc. No. 75.)

On April 3, 2019, the Court took Wi-LAN's motion to dismiss LG's antitrust and unfair competition counterclaims under submission.  (Doc. No. 76.)  On April 8, 2019, the Court held a hearing on Wi-LAN's motion to dismiss LG's infectious unenforceability counterclaim.  Victor M. Felix and Christopher M. First appeared for Wi-LAN.  Richard D. Harris appeared for LG.  For the reasons below, the Court denies Wi-LAN's motion to dismiss LG's antitrust and unfair competition counterclaims, and the Court grants Wi-LAN's motion to dismiss LG's infectious unenforceability counterclaim.

## **Background**

On July 11, 2018, Wi-LAN filed a complaint for patent infringement against LG, alleging infringement of U.S. Patent Nos. 8,787,924, 8,867,351, 9,226,320, and 9,497,743. (Doc. No. 1.)  Specifically, Wi-LAN alleges that LG's wireless communication products that are compliant with the 3rd Generation Partnership Project 4G LTE standard directly infringe the patents-in-suit.  (Id. ¶¶ 37, 40, 53, 66, 79.)

On October 10, 2018, LG filed an answer to Wi-LAN's complaint along with counterclaims for: (1) declaratory judgments of non-infringement and invalidity of the patents-in-suit; (2) declaratory judgment of unenforceability for failure to disclose to standard setting organizations; (3) declaratory judgment of unenforceability of the '351 patent; (4) declaratory judgment that LG is entitled to license the patents-in-suit on FRAND/RAND terms and conditions; (5) breach of contract; (6) monopolization and

attempted monopolization in violation of section 2 of the Sherman Act; and (7) unfair business practices under California Business and Profession Code § 17200 *et seq.* (Doc. No. 17.) On November 13, 2018, the Court issued a scheduling order in the action. (Doc. No. 36.) By the present motions, Wi-LAN moves pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings to dismiss: (1) LG's counterclaim for monopolization in violation of section 2 of the Sherman Act; (2) LG's counterclaim for attempted monopolization in violation of section 2 of the Sherman Act; (3) LG's counterclaim for unfair business practices under California Business and Profession Code § 17200 *et seq.*; and (4) LG's counterclaim for unenforceability of the '351 patent. (Doc. Nos. 56-1, 61-1.)

## Discussion

## I. Legal Standards for a Rule 12(c) Motion for Judgment on the Pleadings

In patent cases, a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the "the procedural law of the regional circuit." Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288, 1293 (Fed. Cir. 2016). Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "'Judgment on the pleadings is properly granted when[, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). The Ninth Circuit has explained that the standard for deciding a Rule 12(c) motion "is 'functionally identical'" to the standard for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (quoting Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989)); accord Chavez, 683 F.3d at 1108.

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

18-cv-01577-H-BGS

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). But, a court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, "[a]lthough the complaint's factual allegations generally must be treated as true in evaluating a motion for judgment on the pleading, courts may consider documents incorporated into the complaint by reference, and matters properly subject to judicial notice." Lee v. City of San Diego, No. 18CV0159 W (BLM), 2019 WL 117775, at *3 (S.D. Cal. Jan. 7, 2019) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)); see Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018); Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

## II. Analysis of LG's Counterclaims

### A. LG's Counterclaim for Monopolization under Section 2 of the Sherman Act

In its answer and counterclaims, LG alleges a counterclaim for monopolization in violation of Section 2 of the Sherman Act. (Doc. No. 17, Counterclaims ¶¶ 284-339.) Wi-LAN argues that this counterclaim should be dismissed because LG has failed to adequately allege a claim for monopolization. (Doc. No. 56-1 at 4-14.)

Section 2 of the Sherman Act provides: "Every person who shall monopolize, or

attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony." 15 U.S.C. § 2. To state a claim for monopolization in violation of Section 2 of the Sherman Act, a plaintiff must allege that the defendant: "(1) possessed monopoly power in the relevant market, (2) willfully acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury." MetroNet Services Corp. v. Quest Corp., 383 F.3d 1124, 1130 (9th Cir. 2004); accord Somers v. Apple, Inc., 729 F.3d 953, 963 (9th Cir. 2013). The Court addresses each of these elements in turn below.

i.    Monopoly Power

Wi-LAN argues that LG has failed to plausibly plead that Wi-LAN has monopoly power. (Doc. No. 56-1 at 4-5.) "In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'" Newcal Indus., Inc. v. Ikon Office Sol., 513 F.3d 1038, 1044 (9th Cir. 2008). "That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." Id. "Because the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6)." Apple Inc. v. Samsung Elecs. Co., No. 11-CV-01846, 2012 WL 1672493, at *4 (N.D. Cal. May 14, 2012) (citing Newcal, 513 F.3d at 1045). "Thus, an antitrust complaint survives a Rule 12(b)(6) motion that attacks the definition of the relevant market unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect." Id. (citing Newcal, 513 F.3d at 1045).

In its counterclaims, LG alleges that the relevant markets for purposes of its monopolization claim "are the various markets for technologies that—before the IEEE 802.16 standard and the 3GPP LTE standard were implemented—were competing to perform each of the various functions covered by each of Wi-LAN's purported essential patents for the IEEE 802.16 standard and the 3GPP LTE standard (collectively, the relevant

'Wireless Technologies Markets')."[1]  (Doc. No. 17, Counterclaims ¶ 306.)  LG further alleges:  "WI-LAN holds monopoly power in the relevant Wireless Technologies Markets, assuming that the Patents-in-Suit are—as Wi-LAN claims—essential to the IEEE 802.16 and 3GPP LTE standards, valid, and enforceable."  (Id. ¶ 309.)

LG explains in its allegations that:

> If Wi-LAN in fact has patents covering technologies that have been incorporated into the relevant standards, it has the power to raise prices and exclude competition with respect to each of the technologies covered by its patents and incorporated in the relevant standards. . . . Barriers to entry into these markets are high because, among other reasons, the poststandardization lock-in effect means that other technologies are no longer viable substitutes for the technologies the standards specify to perform functions included in the standards.

(Id. ¶ 308.)  LG alleges that: "by asserting the Patents-in-Suit, Wi-LAN can (and has) extracted royalties or other licensing terms for those patents that greatly exceed what it could have obtained before the IEEE and 3GPP standardized the technologies that Wi-LAN claims are covered by the Patents-in-Suit."  (Id. ¶ 309.)

These allegations are sufficient to plead that Wi-LAN had monopoly power within the relevant market.  See Apple, 2012 WL 1672493, at *5-6 (finding the plaintiff had adequately alleged that the defendant possessed monopoly power in the relevant market

---

[1]     Wi-LAN notes that this allegation is contradicted elsewhere in LG's monopolization counterclaim when LG's alleges that the patents-in-suit are not infringed by products having components designed based upon the IEEE 802.16 standard or the 3GPP LTE standard.  (Doc. No. 56-1 at 4-5 (citing Doc. No. 17, Counterclaims ¶ 285).)  But this inconsistent allegation is of no consequence because Federal Rule of Civil Procedure 8 allows parties to plead inconsistent factual allegations in the alternative.  See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Molsbergen v. United States, 757 F.2d 1016, 1018 (9th Cir. 1985) ("[T]he Federal Rules of Civil Procedure . . . explicitly authorize litigants to present alternative and inconsistent pleadings."); Cellars v. Pac. Coast Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999) ("A party may plead alternative theories of liability, even if those theories are inconsistent or independently sufficient.  Further, a party may allege inconsistent factual allegations."); Dong Ah Tire & Rubber Co. v. Glasforms, Inc., No. C 06-3359 JF (RS), 2009 WL 667171, at *4 (N.D. Cal. Mar. 10, 2009) (same).

where: (1) the complaint defined the relevant market as "the various markets for technologies that—before the standard was implemented—were competing to perform each of the various functions covered by each of [defendant]'s purported essential patents for UMTS;" (2) plaintiff alleged that defendant "has obtained 'the power to raise prices and exclude competition' in the relevant [market];" and (3) plaintiff alleged that "it has been locked-in to the technology standard"); Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 315 (3d Cir. 2007) (finding the plaintiff had adequately alleged that the defendant possessed monopoly power in the relevant market where: (1) "[t]he [c]omplaint defined the relevant market as the market for [defendant's] proprietary WCDMA technology, a technology essential to the implementation of the UMTS standard;" (2) the complaint alleged "adherents to the UMTS standard have become locked in;" and (3) the complaint alleged the defendant "had the power to extract supracompetitive prices").

### ii. Anticompetitive Conduct

Wi-LAN argues that LG has failed to plausibly plead antitrust conduct. (Doc. No. 56-1 at 6-12.) In response, LG argues that it has sufficiently pled anticompetitive conduct by Wi-LAN under its failure to disclose IPR theory, its false FRAND theory, and its sham litigation theory. (Doc. No. 60 at 10-13.)

### a. Failure to Disclose IPR Theory

In order to establish anticompetitive conduct based a failure to disclose intellectual property rights theory, a plaintiff "must show that the patent holder's failure to disclose its intellectual property rights induced the SSO to set the standard incorporating the essential patent." Apple Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2011 WL 4948567, at *5 (N.D. Cal. Oct. 18, 2011) (citing Rambus Inc. v. FTC, 522 F.3d 456, 466 (D.C. Cir. 2008)). "In other words, [the plaintiff] must allege that there was an alternative technology that the SSO was considering during the standard setting process and that the SSO would have adopted an alternative standard had it known of the patent holder's intellectual property rights." Id.

Further, because allegations of anticompetitive conduct based on a failure to disclose

intellectual property rights theory sound in fraud, a plaintiff must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). See id. Under Rule 9(b), a plaintiff must plead fraud with particularity. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Rule 9(b) is satisfied if the allegations of fraud are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

Wi-LAN agues that LG's allegations that the SSOs could have chosen a different technology instead of the standards adopted are insufficient. (Doc. No. 56-1 at 10-11.) The Court disagrees. In its counterclaims, LG alleges: "Wi-LAN's non-disclosure excluded viable alternative technologies from the relevant Wireless Technologies Markets. Had Wi-LAN properly disclosed the existence of its IPR, the IEEE and 3GPP would have decided to standardize alternative technologies to perform the relevant functions." (Doc. No. 17, Counterclaims ¶ 315.) LG then alleges in detail for each of the patents-in-suit the specific alternative technology that the SSOs could have adopted. (Id.) These allegations are sufficient to allege that there was an alternative technology and that the SSO would have adopted an alternative standard even under Rule 9(b)'s heightened pleading standard. See Apple, 2012 WL 1672493, at *8.

Wi-LAN also argues that it cannot be liable under antitrust law for the alleged actions of the prior owners of the patents-in-suit. (Doc. No. 56-1 at 11-12.) Wi-LAN explains that LG's claims are based on the conduct of prior owners of the patents-in-suit, not Wi-LAN, and, therefore, Wi-LAN cannot be held liable for this prior conduct. (Id.) But a review of LG's counterclaims shows that this is not correct. In the counterclaims, LG alleges specific conduct and specific representations made by Wi-LAN to the SSOs, not just representations by the prior patent owners. (See, e.g., Doc. No. 17, Counterclaims ¶¶ 115, 127, 188, 267-69.) In sum, LG has adequately alleged antitrust conduct by Wi-LAN based on a failure to disclose intellectual property rights theory in support of its

monopolization claim.

b.     Fraudulent FRAND Declarations Theory

"Courts have recognized that fraudulent FRAND declarations that are used to induce SSOs to adopt standards essential patents can be monopoly conduct for the purposes of establishing a Section 2 claim." Apple, 2011 WL 4948567, at *4 (citing Broadcom, 501 F.3d at 310-11, 314). Allegations of anticompetitive conduct based a fraudulent FRAND declaration theory also must satisfy Rule 9(b)'s heightened pleading standard. See Apple, 2011 WL 4948567, at *4.

Wi-LAN argues that LG's allegations are insufficient because LG has failed to specifically identify what statements it claims were misrepresentations. (Doc. No. 56-1 at 12.) In its counterclaims, LG alleges specific facts providing the who, what, when, where and which patents of the alleged false FRAND declarations. (Doc. No. 17, Counterclaims ¶¶ 267-73.) These allegations are sufficient to satisfy Rule 9(b).

Wi-LAN also argues that LG's allegations regarding Wi-LAN's subjective intent are insufficient. (Doc. No. 56-1 at 12.) In its counterclaims, LG alleges: "Wi-LAN's failure to inform the IEEE, ETSI, and 3GPP that, contrary to its undertakings, it in fact would not meet its commitments under its FRAND declarations was intentional and made with deceptive intent in order to induce the IEEE and 3GPP to include in the IEEE 802.16 and 3GPP LTE standards technologies that Wi-LAN claims are covered by the Patents-in-Suit." (Doc. No. 17, Counterclaims ¶ 318.) These allegations are sufficient to allege intent. See Fed. R. Civ. P. 9(b) ("[I]ntent . . . may be alleged generally.").

Finally, Wi-LAN argues that LG's allegations in support of this antitrust theory conflict with LG's allegations regarding its failure to disclose intellectual property rights theory. (Doc. No. 56-1 at 12.) But Rule 8 allows parties to plead inconsistent factual allegations in the alternative. See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Molsbergen, 757 F.2d at 1018; Cellars, 189

F.R.D. at 578. As such, LG may permissibly plead its alternative theories of antitrust liability. See Apple, 2012 WL 1672493, at *7-8 (N.D. Cal. May 14, 2012) (permitting plaintiff to allege both a false FRAND theory of anticompetitive conduct and a failure to disclose IPR theory of anticompetitive conduct). In sum, LG has adequately alleged antitrust conduct by Wi-LAN based on a false FRAND declaration theory in support of its monopolization claim.[2]

### iii.    Antitrust Injury

Wi-LAN argues that LG has failed to adequately allege an antitrust injury. (Doc. No. 56-1 at 13-14.) In order for a plaintiff to properly plead that it has suffered an antitrust injury, "it must allege injury to competition." Apple, 2011 WL 4948567, at *6; see also Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California, 190 F.3d 1051, 1055 (9th Cir. 1999) (A plaintiff may only pursue an antitrust action if it can show "'antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.").

In its counterclaims, LG alleges:

> Wi-LAN's conduct more broadly has and continues to threaten unlawfully to exclude other LG competitors from, and increase royalties and other costs associated with, the manufacture and sale of downstream wireless communications devices that implement the IEEE 802.16 and 3GPP LTE standards and chill competition to develop and sell innovative new IEEE 802.16 and/or 3GPP LTE-compliant products, resulting in increased prices and decreased quality and innovation in downstream product markets and complementary innovation markets.

(Doc. No. 17, Counterclaims ¶ 333.) These allegations are sufficient to allege antitrust injury. See Apple, 2011 WL 4948567, at *6 (finding similar allegations sufficient to "plead harm to competition"). In sum, LG has adequately alleged a claim for monopolization in

---

[2]    Wi-LAN also argues that LG has failed to properly plead sham litigation as part of its antitrust conduct allegations in support of its monopolization counterclaim. (Doc. No. 56-1 at 6-10.) Because LG's allegations of deceptive conduct before the SSOs are sufficient to allege antitrust conduct in support of its monopolization counterclaim, the Court declines to address these additional allegations at this time.

18-cv-01577-H-BGS

violation of Section 2 of the Sherman Act, and the Court declines to dismiss LG's counterclaim for monopolization.

B. <u>LG's Counterclaim for Attempted Monopolization under Section 2 of the Sherman Act</u>

In its answer and counterclaims, LG alleges a counterclaim for attempted monopolization in violation of Section 2 of the Sherman Act. (Doc. No. 17, Counterclaims ¶¶ 340-44.) In order to state a claim for attempted monopolization in violation of the Sherman Act, the plaintiff must allege facts demonstrating the following four elements: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." <u>Rebel Oil Co. v. Atl. Richfield Co.</u>, 51 F.3d 1421, 1433 (9th Cir. 1995) (citing <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 811 (9th Cir. 1988)).

Wi-LAN argues that LG's attempted monopolization counterclaim should be dismissed because this counterclaim suffers from the same pleading defects as LG's counterclaim for monopolization. (Doc. No. 56-1 at 14.) But LG has adequately alleged a claim for monopolization in violation of section 2 of the Sherman Act. <u>See</u> <u>supra</u>. As such, the Court rejects this argument.

Wi-LAN also argues that LG has failed to adequately allege specific intent in support of its counterclaim for attempted monopolization. (Doc. No. 56-1 at 14-15.) In order to state a claim for attempted monopolization, a plaintiff must allege "specific intent to control prices or destroy competition." <u>Ernest W. Hahn, Inc. v. Codding</u>, 615 F.2d 830, 845 (9th Cir. 1980); <u>accord</u> <u>Rebel Oil</u>, 51 F.3d at 1433. The Ninth Circuit has explained that "(specific intent) can be satisfied 'by inference drawn from proof of predatory or anticompetitive conduct which constitutes an unreasonable restraint of trade.'" <u>Ernest W. Hahn</u>, 615 F.2d at 845; <u>see</u> <u>Hunt-Wesson Foods, Inc. v. Ragu Foods</u>, Inc., 627 F.2d 919, 926 (9th Cir. 1980) ("Specific intent to monopolize will normally be proved by inference from conduct.").

18-cv-01577-H-BGS

LG's counterclaims contain sufficient allegations of anticompetitive conduct by Wi-LAN. See supra. Further, LG alleges: "Wi-LAN has willfully engaged in the anticompetitive conduct described above with the specific intent to acquire and maintain market power in a relevant antitrust market—namely, the relevant Wireless Technologies Market—and destroy competition therein." (Doc. No. 17, Counterclaims ¶ 341.) These allegations combined are sufficient to infer the specific intent necessary to support LG's counterclaim for attempted monopolization. See Hunt-Wesson, 627 F.2d at 926 (holding that plaintiff had adequately alleged a claim for attempted monopolization where plaintiff "alleged that [defendant] engaged in acts resulting in anticompetitive effects, 'with the specific intent to eliminate plaintiff and others as competitors" and "described in detail the allegedly anticompetitive acts"). In sum, the Court declines to dismiss LG's counterclaim for attempted monopolization in violation of Section 2 of the Sherman Act.

C.     LG's Counterclaim for Unfair Business Practices Under California Business & Professions Code § 17200 *et seq.*

In its answer and counterclaims, LG alleges a counterclaim for unfair business practices under California Business & Professions Code § 17200 *et seq*. (Doc. No. 17, Counterclaims ¶¶ 345-49.) Wi-LAN argues that because LG's antitrust allegations fail, LG's counterclaim for unfair business practices also fails to state a claim. (Doc. 56-1 at 15.)

The California Supreme Court has explained that the "unfair" prong of section 17200 "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). Thus, a plaintiff that adequately alleges a claim for violation of the Sherman Act also adequately alleges a claim for violation of California's UCL under the "unfair" prong. See, e.g., Apple, 2012 WL 1672493, at *8 ("Because Apple has adequately alleged a violation of Section 2 of the Sherman Act, Apple has also stated a claim that Samsung's conduct

violates the California UCL."); <u>Toranto v. Jaffurs</u>, 297 F. Supp. 3d 1073, 1100 (S.D. Cal. 2018).

Here, LG has properly alleged counterclaims for monopolization and attempted monopolization in violation of Section 2 of the Sherman Act. <u>See</u> <u>supra</u>. As such, LG has adequately alleged a counterclaim for unfair business practices under Section 17200, and the Court declines to dismiss that counterclaim. <u>See</u> <u>Apple</u>, 2012 WL 1672493, at *8.

     D.    <u>Wi-Lan's Motion for Severance of LG's Antitrust Counterclaims</u>

Wi-LAN argue that if the Court declines to dismiss LG's antitrust counterclaims, the Court should bifurcate and stay those counterclaims to conserve judicial economy and reduce jury confusion. (Doc. No. 56-1 at 16.) In response, LG argues that the Court should deny Wi-LAN's bifurcation request because, among other reasons, the request is premature at this stage of the litigation. (Doc. No. 60 at 17.)

Federal Rule of Civil Procedure 42(b) provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

"Courts have broad discretion under Federal Rule of Civil Procedure 42(b) to bifurcate and stay counterclaims." <u>Fitbit, Inc. v. Aliphcom</u>, No. 5:15-CV-04073-EJD, 2016 WL 7888033, at *1 (N.D. Cal. May 27, 2016); <u>see</u> <u>Jinro Am. Inc. v. Secure Investments, Inc.</u>, 266 F.3d 993, 998 (9th Cir.), <u>opinion amended on denial of reh'g</u>, 272 F.3d 1289 (9th Cir. 2001). "Bifurcation of patent and antitrust claims is not mandatory, but is common." <u>Masimo Corp. v. Philips Elecs. N. Am. Corp.</u>, 742 F. Supp. 2d 492, 496 (D. Del. 2010)

Nevertheless, the Court agrees with LG that Wi-LAN's motion for bifurcation is premature. This case is in its initial stages: fact discovery has just begun, the Court has not held a claim construction hearing, expert discovery has not begun, and the trial date is a year away. As such, the Court, exercising its sound discretion, declines to bifurcate and stay LG's antitrust counterclaims at this time. <u>See</u> <u>Actividentity Corp. v. Intercede Grp.</u>

PLC, No. C 08-4577 VRW, 2009 WL 10691373, at *2 (N.D. Cal. Dec. 30, 2009) ("The decision whether separate trials are appropriate may 'be better informed after all discovery is taken and the expert reports are disclosed.'"); Netflix, Inc. v. Blockbuster, Inc., No. C06-02361 WHA, 2006 WL 2458717, at *10 (N.D. Cal. Aug. 22, 2006). The Court denies Wi-LAN's motion to bifurcate LG's antitrust counterclaims without prejudice to Wi-LAN renewing its motion to bifurcate at a later stage in these proceedings.

E.    LG's Counterclaim for Unenforceability of the '351 Patent

In its answer and counterclaims, LG alleges a counterclaim for unenforceability of the '351 patent. (Doc. No. 17, Counterclaims ¶¶ 190-260.) Specifically, LG alleges that one or more persons involved in the prosecution of the '351 patent's parent patent, U.S. Patent No. 7,333,435, committed inequitable conduct during the prosecution of the '435 patent. (Id. ¶¶ 191-92, 241-55.) LG further alleges that because the '351 patent claims priority and/or is related to the '435 patent, the '351 patent is unenforceable under the doctrine of infectious unenforceability. (Id. ¶¶ 193, 256-60.) Wi-LAN argues that the Court should dismiss LG's infectious unenforceability counterclaim because LG has failed to properly allege inequitable conduct during the prosecution of the '435 patent. (Doc. No. 61-1 at 1-2.)

i.    Legal Standards for Pleading Inequitable Conduct

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). A finding of inequitable conduct as to "any single claim renders the entire patent unenforceable." Id. at 1288.

The elements of a claim for "inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009). The Federal Circuit has explained a claim for inequitable conduct requires a finding of both

materiality and intent to deceive.  <u>Therasense</u>, 649 F.3d at 1287.  They are separate requirements, and a "a district court may not infer intent solely from materiality."  <u>Id.</u> at 1290.

In addition, the Federal Circuit has explained that to meet the standard for materiality, the misrepresentation or omission must be "but-for material."  <u>Id.</u> at 1291.  A misrepresentation or omission is but-for material "[i]f the PTO would not have allowed a claim had it been aware" of the undisclosed information or the falsity of the representation.  <u>Id.</u>  Further, in order to establish inequitable conduct, "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'"  <u>Id.</u> at 1290.  "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."  <u>Id.</u> at 1290-91.

An inequitable conduct counterclaim must be pled with "particularity" under Federal Rule of Civil Procedure 9(b).  <u>Exergen</u>, 575 F.3d at 1326.  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Therefore, a claim of inequitable conduct must be pled with particularity, i.e., it must be pleaded in detail.  <u>Exergen</u>, 575 F.3d at 1327.  Specifically, the counterclaim "must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.  <u>Id.</u> at 1328.

> Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

<u>Id.</u> at 1328-29.  "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith."  <u>Id.</u> at 1329 n.5.

      ii.    <u>Failure to Disclose</u>

Wi-LAN argues that LG's allegations of withholding of material information that

LG uses to support its infectious unenforceability counterclaim are false and contradicted by a review of the prosecution history. (Doc. No. 61-1 at 1, 8-9.) In order to properly state a claim for unenforceability due to inequitable conduct, LG must allege, among other requirements, that "an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information." Exergen, 575 F.3d at 1327.

Here, LG alleges that during the prosecution of the '435 patent, the named inventor and his counsel failed to disclose the International Search Report at issue, the Emanuel reference (U.S. Patent Pub. No. 2002/032788), Emanuel's foreign counterparts, a First Examination Report, and a Second Examination Report. (Doc. No. 17, Counterclaims ¶ 241.)

Wi-LAN argues that a review of the prosecution history for the '435 patent shows that the International Search Report at issue was indeed disclosed to the PTO. (Doc. No. 61-1 at 5-6, 9.) The Court agrees. "When considering a motion for judgment on the pleadings, [a] court may consider facts that 'are contained in materials of which the court may take judicial notice.'" Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 (9th Cir. 1999). "Judicial notice is appropriate for records and 'reports of administrative bodies.'" United States v. 14.02 Acres of Land More or Less in Fresno Cty., 547 F.3d 943, 955 (9th Cir. 2008). This includes documents issued by the PTO, such as a patent's prosecution history. See NetFuel, Inc. v. Cisco Sys. Inc., No. 5:18-CV-02352-EJD, 2018 WL 4510737, at *2 n.1 (N.D. Cal. Sept. 18, 2018); IPS Grp., Inc. v. Duncan Sols., Inc., No. 15-CV-1526-CAB (MDD), 2016 WL 9023432, at *1 (S.D. Cal. Mar. 18, 2016); Audionics Sys., Inc. v. AAMP of Fla., Inc., No. CV1210763MMMJEMX, 2013 WL 12129652, at *2 (C.D. Cal. Nov. 19, 2013); Coinstar, Inc. v. Coinbank Automated Sys., Inc., 998 F. Supp. 1109, 1114 (N.D. Cal. 1998). As such, the Court takes judicial notice

of the '435 patent's prosecution history.[3]

A review of the prosecution history for the '435 patent reflects that the inventor and his counsel did disclose the International Search Report to the PTO, and the search report identifies the Emanuel reference and Emanuel's foreign counterparts. (Doc. No. 61-2, Ex. A at 38-39, 111, 114-16.) Indeed, LG's own allegations acknowledge that the named inventor and his counsel submitted a copy of the International Search Report to the PTO, and the PTO issued an "acceptance of application" form indicating that the International Search Report was included in the file. (Doc. No. 17, Counterclaims ¶¶ 215, 217.) Thus, both the prosecution history, and LG's own allegations contradict LG's assertion that the International Search Report was not disclosed to the PTO.

In response, LG argues that this is not fatal to its counterclaim because the counterclaim is also based on the inventor's failure to disclose the Emanuel reference itself along with Emanuel's foreign counterparts and two examination reports. (Doc. No. 74 at 8-11.) But a review of the prosecution history shows that the inventor and his counsel disclosed the International Search Report to the PTO, and the search report specifically identified the Emanuel reference as a published U.S. patent application, listed the relevant portions of the Emanuel reference, and stated what claims in the application for which it is relevant. (Doc. No. 61-2, Ex. A at 114.)

LG argues that under the PTO's Manual of Patent Examining Procedure ("MPEP") rules, the mere submission of a search report is insufficient to satisfy an applicant's duty to disclose in a national stage application. (Doc. No. 74 at 8-9.) In making this argument,

---

[3] In addition, the Court notes that it may also consider the '435 patent's prosecution history in ruling on LG's Rule 12(c) motion under the "incorporation by reference doctrine" because LG's counterclaim allegations extensively reference and rely on the prosecution history as the basis for LG's unenforceability counterclaim. See Coto Settlement, 593 F.3d at 1038 ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

LG specifically relies on MPEP § 609.03 and 1893.03(g). (Id.) MPEP § 609.03 provides: "The examiner will consider the documents cited in the international search report in a PCT national stage application when the Form PCT/DO/EO/903 indicates that both the international search report and the copies of the documents are present in the national stage file." MPEP § 609.03; accord MPEP § 1893.03(g). LG notes that in the "notice of acceptance of application" form (the Form PCT/DO/EO/903) for the '435 patent, the PTO examiner only noted that a copy of the international search report itself was present. (Doc. No. 74 at 10.)

LG is correct. In the Form PCT/DO/EO/903 at issue, the PTO examiner only notes that the international search report is present in the file. (Doc. No. 61-2, Ex. A at 38-39.) The form does not mention any copies of references being present. (Id.) Nevertheless, a further review of section 609.03 reveals that the listing of the Emanuel in the international search report was still sufficient to disclose that reference for consideration by the PTO.

MPEP § 609.03 provides a list of three scenarios "regarding references listed in the search report of the international application." MPEP § 609.03. The third scenario concerns references listed in an international search report that will not be considered by the PTO absent further action by the applicant. MPEP § 609.03 ¶ 6.55. Section 609.03 instructs the examiner, when appropriate to notify the applicant that: "The listing of references in the PCT international search report is not considered to be an information disclosure statement (IDS) complying with 37 CFR 1.98. 37 CFR 1.98(a)(2) requires a legible copy of [certain references]. . . . Therefore, the references cited in the international search report have not been considered."[4] Id. But section 609.03 explains that this third scenario does not apply if the missing reference is a "U.S. Patent [or] U.S. patent application publication[]." This make sense because 37 C.F.R. § 1.98 does not require applicants to provide copies of U.S. patents or U.S. patent applications to the PTO. See 37

---

[4] The Court notes that a review of the prosecution history does not show that the examiner ever provided the inventor of the '435 patent with this specific notice under MPEP § 609.03 ¶ 6.55. (See generally Doc. No. 61-2, Ex. A.)

C.F.R. § 1.98(a)(2) (listing the types of references that require the submission of "a legible copy"). The international search report at issue specifically identifies the Emanuel reference as a published U.S. patent application. (Doc. No. 61-2, Ex. A at 114.)

The first and second scenarios listed in section 609.03 pertain to situations "where copies of [the] references are not required under 37 CFR 1.98," such as for U.S patent application publications like the Emanuel reference. MPEP § 609.03 ¶¶ 6.53, 6.54. In both of these scenarios, section 609.03 explains that the reference will be considered. See id. Thus, the submission of the international search report listing the Emanuel reference as a published U.S. patent application should have been sufficient to disclose that reference to the PTO and for the PTO to consider it under section 609.03.

In response, at the hearing, LG noted that the examiner did not list Emanuel as one of the references considered on the PTO-892 form for the '435 patent. (See Doc. No. 61-2, Ex. A at 29.) But this is of no consequence because section 609.03 explains that if a reference is properly disclosed through an international search report "[t]here is no requirement that the examiner list the documents on a PTO-892 form." MPEP § 609.03.

LG also noted that its inequitable conduct counterclaim is also based on the inventor and his counsel's failure to disclose Emanuel's foreign counterparts and two examination reports. But LG has failed to adequately allege or explain how these additional references would not be cumulative of the Emanuel reference itself. (See Doc. No. 17, Counterclaims ¶¶ 247-51.) See 37 C.F.R. § 1.56(b) ("[I]nformation is material to patentability [only] when it is not cumulative to information already of record or being made of record in the application."); Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1328 (Fed. Cir. 1998) ("[A] patentee need not cite an otherwise material reference to the PTO if that reference is merely cumulative or is less material than other references already before the examiner.") Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1443 (Fed. Cir. 1991) (a patentee "ha[s] no obligation to disclose cumulative references"). In sum, in light of a review of the prosecution history, which is both judicially noticeable and incorporated by reference, LG has failed to adequately allege the "failure to disclose material information"

element in support of its inequitable conduct allegations.

### iii. Specific Intent

Further, LG has failed to adequately allege intent in support of its inequitable conduct allegations. In order to properly allege "intent" to support of an inequitable conduct claim, the pleading must contain "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual . . . withheld or misrepresented th[e] information with a specific intent to deceive the PTO." Exergen, 575 F.3d at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." Id. at 1329 n.5.

Here, a review of the prosecution history shows that the inventor and his counsel disclosed the International Search Report, which included a description of the Emanuel reference (a published U.S. patent application), to the PTO. (Doc. No. 61-2, Ex. A at 38-39, 111, 114-16.) The inventor was not required to submit a separate copy of the Emanuel reference under 37 C.F.R. § 1.98 in order for the reference to be considered by the examiner. See 37 C.F.R. § 1.98; MPEP § 609.03. And the examiner never notified the inventor and his counsel that the Emanuel reference would not be considered or that they needed to submit an information disclose statement even though section 609.03 provides examiners with express notification language to use in that circumstance. See MPEP § 609.03 ¶ 6.55. It cannot be reasonably inferred from these facts that the inventor and his counsel withheld the Emanuel reference from the PTO with a specific intent to deceive to the PTO. As such, LG has failed to adequately allege the specific intent element in support of its inequitable conduct allegations.

### iv. Conclusion

In sum, LG has failed to properly state a counterclaim for unenforceability of the '351 patent, and the Court dismisses LG's counterclaim for a declaratory judgment of unenforceability of the '351 patent due to infectious unenforceability. Further, because the defects in counterclaim cannot be cured through amendment of the pleadings, particularly

in light of the contents of the judicially noticeable prosecution history of the '435 patent, the Court dismisses LG's unenforceability counterclaim with prejudice. <u>See</u> <u>Telesaurus VPC, LLC v. Power</u>, 623 F.3d 998, 1003 (9th Cir. 2010) ("'A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." (internal quotation marks and citations omitted)).

## Conclusion

For the reasons above, the Court denies Wi-LAN's Rule 12(c) motion to dismiss LG's antitrust and unfair competition counterclaims, and the Court grants Wi-LAN's Rule 12(c) motion to dismiss LG's infectious unenforceability counterclaim. The Court dismisses LG's counterclaim for a declaratory judgment of unenforceability of the '351 patent due to infectious unenforceability with prejudice. The action will proceed on the remaining claims and counterclaims.

**IT IS SO ORDERED.**

DATED: April 12, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT