Victor M. Felix, SBN 179622
Victor.Felix@procopio.com
PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Tel. (619) 515-3229
Fax (619) 744-5409

Leslie V. Payne (TX Bar No. 00784736) (*Pro Hac Vice*)
lpayne@hpcllp.com
Eric J. Enger (TX Bar No. 24045833) (*Pro Hac Vice*)
eenger@hpcllp.com
Christopher M. First (TX Bar No. 24095112) (*Pro Hac Vice*)
cfirst@hpcllp.com
Alden G. Harris (TX Bar No. 24083138) (*Pro Hac Vice*)
aharris@hpcllp.com
HEIM, PAYNE & CHORUSH LLP
1111 Bagby St., Suite 2100
Houston, TX 77002
T: (713)221-2000  F: (713)221-2021

Attorneys for Plaintiffs *Wi-LAN*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WI-LAN INC.; WI-LAN USA, INC.; & WI-LAN LABS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> LG ELECTRONICS, INC.; LG ELECTRONICS U.S.A., INC.; LG ELECTRONICS MOBILECOMM U.S.A., INC. <br><br> Defendants. | Case No. 3:18-cv-01577-H-AGS <br><br> **PLAINTIFFS' OPPOSITION TO LG's MOTION FOR SANCTIONS** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Date: October 15, 2019 <br> Time: 10:30 am <br> Courtroom: 15A <br> District Judge: Hon. Marilyn L. Huff |

# TABLE OF CONTENTS

I.     BACKGROUND ................................................................. 3

    A. LG's Answer to the Complaint ................................... 3

    B. Mr. Sheldon Gilbert ................................................... 7

    C. LG's Pattern of Threatening Baseless Sanctions ....................... 11

    D. LG's Present Motion for Sanctions ........................... 16

II.    LAW ................................................................................. 16

    A. 18 U.S.C. § 1512 Tampering with a Witness, Victim, or an Informant .... 17

    B. Cal. Penal Code § 136.1 Intimidation of Witnesses and Victims .............. 17

    C. California Rule of Professional Conduct 4.1 ............................................. 18

    D. Local Rule 83.4 ........................................................ 18

    E. 28 U.S.C. § 1927 Counsel's Liability for Excessive Costs ...................... 18

    F. LG's Cases ............................................................... 18

III.   ARGUMENT ................................................................. 19

    A. Wi-LAN's Counsel Did Not Make Any False Statement......................... 19

    B. Wi-LAN's Counsel Did Not Intend to Prevent (and Did Not Prevent) the Testimony of Any Person.......... 21

    C. LG's Requested Relief is Unwarranted ....................................... 23

IV.    CONCLUSION ........................................................... 24

1

# TABLE OF AUTHORITIES

**Cases**

*Barnd v. City of Tacoma*
    664 F.2d 1339 (9th Cir. 1982) ................................................................ 19

*Chambers v. Nasco, Inc.*
    501 U.S. 1269 (1991) .......................................................................... 19

*E & J Gallo Winery v. Encana Energy Servs., Inc.*
    2005 WL 6408198 (E.D. Cal. July 5, 2005) ............................................. 19

*Finjan, Inc. v. Cisco Sys. Inc.*
    Case No. 17-cv-00072-BLF-SVK (Sept. 9, 2019) .................................... 15

*HomeDirect, Inc. v. H.E.P. Direct, Inc.*
    2013 WL 1815979 (N.D. Ill. Apr. 29, 2013 ............................................. 18

*Lanier v. Greaves*
    2006 WL 680547 (S.D. Fla Mar. 13, 2006) ............................................. 19

*Synergistics, Inc. v. Hurst*
    2007 WL 2422871 (E.D. Mo. Aug. 21, 2007) .......................................... 19

*Tesoro Refining & Mktg. Co v. Cal. Finest Oil*
    2016 WL 4269517 (S.D. Cal. Aug. 15 2016) ........................................... 19

*Youngevity Int'l v. Smith*
    2018 WL 747658 (S.D. Cal. Feb. 6, 2018) .............................................. 19

**Statutes**

18 U.S.C. § 1512 ................................................................................ 17, 21

18 U.S.C. § 1512 (b) ............................................................................... 17

18 U.S.C. § 1515(a)(3) ....................................................................... 17, 19

28 U.S.C. § 1927 ..................................................................................... 18

**Other Authorities**

Cal. Penal Code § 136.1 ..................................................................... 17, 21

**Rules**

California Rule of Professional Conduct 4.3(a) ........................................... 18

ii

Civil Local Rule 83.4(a)(2) ..................................................................................... 18

Civil Local Rule 83.4(b) ......................................................................................... 18

Fed. R. Civ. P 37 ..................................................................................................... 16

FED. R. CIV. P. 11(b) ............................................................................................... 20

LG answered Wi-LAN's Complaint by leveling grave accusations of "fraud" at "Wi-LAN," "**Ensemble**," "their **representatives**," and "one or more of the **inventors** of the Patents-in-Suit" based on their alleged misconduct toward standard-setting organizations. Dkt. 17 (LG Answer) at, *e.g.*, ¶¶113-14, 160-67, 188-89, 311, 332 (emphasis added).[1] Specifically, LG has accused Mr. Sheldon Gilbert of making fraudulent representations as Ensemble's former Executive Vice President and co-founder, and as an inventor of the asserted '743 and '924 Patents. *Id.* Despite the gravity of these allegations, LG has no evidence to support them. Wi-LAN has filed a summary judgment motion asking the Court to reject these counterclaims. Dkt. 159.

Now LG is making another serious, yet baseless, accusation: that Wi-LAN's counsel is guilty of witness tampering. This allegation crosses the line of zealous advocacy—it is an unfounded personal attack on the integrity of a fellow attorney. LG alleges "Wi-LAN's counsel's actions successfully influenced, delayed, and prevented the deposition testimony of Mr. Gilbert." Dkt. 162-1 (hereinafter "LG's Motion" or "Mot.") at 1. LG's allegations are false. Mr. Gilbert testified that **LG's counsel**, not Wi-LAN's counsel, suggested he not give testimony about topics related to standard-setting organizations and FRAND:

> Q. [By Ms. Sand, LG's counsel] And as a result of that conversation you came back and indicated you didn't want to testify regarding any FRAND or standard-setting organization topics **as a result of the conversation with Wi-LAN's attorney, correct?**
>
> A. **No, that's not correct.**
>
> Q. Are you willing to testify regarding those topics?
>
> A. I think I would not like to, at least without counsel. But what I came back and said is that I was concerned that maybe I needed counsel if I was a party to the patent, and then **you [Ms. Sand] suggested that you wouldn't cover those topics if that made me feel better**, and I said it did.

---

[1] Ensemble was the original owner of the predecessors to the asserted '924 and '743 Patents, which Ensemble assigned to Wi-LAN in 2004.

Ex. A (Gilbert Depo) at 81:24-82:12. **LG's counsel** voluntarily decided that she "wouldn't cover those topics," and LG never attempted to ask Mr. Gilbert about the topics. Wi-LAN's counsel never objected to LG asking about those topics, and certainly never asked Mr. Gilbert not to testify about them.

Wi-LAN's counsel's statements to Mr. Gilbert were entirely truthful and not made for any improper purpose. Wi-LAN's counsel told Mr. Gilbert: "LG is accusing you and your company Ensemble of doing fraudulent things with respect to standard setting organizations. LG is also accusing your patents as being invalid because they should have never issued in the first place." Ex. A (Gilbert Depo) at 48:12-19. Wi-LAN's counsel accurately relayed LG's counterclaims to Mr. Gilbert; this is apparent from the plain language of LG's Answer.

LG's motion falsely characterizes LG's counterclaims: (1) "LG's counterclaims are *unrelated* to the named inventors," (2) "LG's counterclaims also do not allege that Mr. Gilbert's prior employer Ensemble committed any fraud," and (3) "Wi-LAN's counsel's statements that LG has accused Mr. Gilbert of fraud in this case are false." Mot. at 5, 6, 9 (emphasis in original). The plain language of LG's pleading reveals the falsity of LG's characterizations. For example:

> 188. … IPWireless, Wi-LAN, Wi-LAN's predecessors-in-interest **Ensemble**, Nextwave, and SOMA, **and/or one or more of the inventors of the Patents-in-Suit knowingly and in bad faith failed to disclose** the Patents-in-Suit and the patents and applications that led to the Patents-in-Suit **with the intent to deceive and to induce reliance**. The foregoing actions and conduct have caused damage and continue to cause damage to LG and relevant third parties.

> 189. As a result of **the conduct described above**, the '924 patent, the '743 patent, and the '320 patent are unenforceable against LG on the grounds of estoppel, **fraud**, waiver, implied waiver, unclean hands, patent exhaustion, implied license, and/or other equitable defenses.

Dkt. 17 (LG Answer) at ¶¶188-89 (emphasis added).

Mr. Gilbert is a named inventor of the asserted '743 and '924 Patents and was the Executive Vice President of Ensemble when the alleged "fraud" took place. Not

only does LG explicitly use the word "fraud" to characterize its allegations against "Ensemble" and "one or more of the inventors of the Patents-in-Suit," LG also cites a letter of assurance to IEEE signed by Mr. Gilbert (*id.* at ¶160) and alleges that Ensemble's conduct (including this letter) constitutes a "failure to disclose [that] was made in bad faith with the intent to deceive and to induce reliance." *Id.* at ¶167. By using these words in its Answer, LG is alleging the elements of fraud. *See United States v. Clevenger*, 733 F.2d 1356, 1358 (9th Cir. 1984) ("The elements of fraud consist of: (1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and **with intent to deceive** (5) with action taken in **reliance** upon the representation.") (emphasis added). Moreover, the Court previously recognized LG's "allegations of anticompetitive conduct based on a failure to disclose intellectual property rights theory *sound in fraud*." Dkt. 79 at 7-8 (emphasis added); *see also id.* at 9 ("Allegations of anticompetitive conduct based [on] a *fraudulent FRAND declaration* theory also must satisfy Rule 9(b)'s heightened pleading standard.") (emphasis added).

Civil Local Rule 83.4(a)(2) states that "An attorney in practice before this court must not … seek sanctions against or the disqualification of any other attorney for any improper purpose." LG's Sanctions Motion is improper because it is based on untrue allegations. The Court should therefore deny it.

## I.    BACKGROUND

### A.    LG's Answer to the Complaint

LG's Answer recites a litany of counterclaims that allege fraud and other misconduct by, *inter alia*, "Ensemble," its "representatives," and "one or more of the inventors of the Patents-in-Suit."

Paragraphs 188 and 189 of LG's Answer allege that "Ensemble" and "one or more of the inventors of the Patents-in-Suit" engaged in conduct that constitutes "fraud":

188. IPWireless, Wi-LAN, Wi-LAN's predecessors-in-interest **Ensemble**, Nextwave, and SOMA, **and/or one or more of the inventors of the Patents-in-Suit**, were or are a member of a SSO involved with the setting of a standard (or standards) that Wi-LAN asserts, or has asserted, is necessarily covered by one or more claims of the Patents-in-Suit. IPWireless, Wi-LAN, Wi-LAN's predecessors-in-interest **Ensemble**, Nextwave, and SOMA, **and/or one or more of the inventors of the Patents-in-Suit** participated in the setting of such standard (or standards). Despite this participation, the Patents-in-Suit, and the patents and applications that led to the Patents-in-Suit, including any priority patents and/or applications, **were never disclosed to the applicable SSOs**. Accordingly, the standards that Wi-LAN asserts, or has asserted, are necessarily covered by one or more claims of the Patents-in-Suit were set without consideration of the Patents-in-Suit, or the patents and applications that led to the Patents-in-Suit. IPWireless, Wi-LAN, Wi-LAN's predecessors-in-interest **Ensemble**, Nextwave, and SOMA, **and/or one or more of the inventors of the Patents-in-Suit knowingly and in bad faith failed to disclose** the Patents-in-Suit and the patents and applications that led to the Patents-in-Suit **with the intent to deceive and to induce reliance**. The foregoing actions and conduct have caused damage and continue to cause damage to LG and relevant third parties.

189. As a result of **the conduct described above**, the '924 patent, the '743 patent, and the '320 patent are unenforceable against LG on the grounds of estoppel, **fraud**, waiver, implied waiver, unclean hands, patent exhaustion, implied license, and/or other equitable defenses.

Dkt. 17 (LG Answer) at ¶¶ 188-89 (emphasis added).

LG's Answer includes many similar allegations, for example:

113. Wi-LAN, **Ensemble**, and **their representatives intentionally and knowingly failed to disclose the '924 patent, the '743 patent**, and the '924 patent and '743 patent priority patents and applications as essential, or potentially essential, to the specifications being drafted and revised by TSG RAN, including TS 36.300 and TS 36.321.

114. The **foregoing failure to disclose the '924 and '743 patents**, and any of the '924 patent and '743 patent priority patents and applications was made in **bad faith with the intent to deceive and induce reliance**.

*Id.* at ¶¶ 113-14 (emphasis added). Again, LG alleges the elements of fraud ("bad

faith with the intent to deceive and induce reliance") and states that such fraud occurred when "Ensemble" and its "representatives" allegedly failed to disclose the '743 and '924 Patents (invented by Mr. Gilbert) to the ETSI standards setting organization.

LG pleads even more fraud allegations based, in part, on a letter Mr. Gilbert submitted to the IEEE standards setting organization:

> 160. On March 29, 2004, **Ensemble submitted a LOA to the IEEE [signed by Sheldon Gilbert]** identifying the '518 and '561 applications as essential to the 802.16 standard.
>
> …
>
> 162. **The '518 and '561 applications were never disclosed to the IEEE before March 29, 2004—nearly five years after the '518 application was filed with the PTO**, and nearly four years after the 802.16 MAC task group adopted the proposal submitted by Kenneth Stanwood, Jay Klein, and James Mollenauer.
>
> …
>
> 165. Kenneth Stanwood, Jay Klein, James Mollenauer, and Wi-LAN's predecessor-in-interest **Ensemble intentionally and knowingly failed to disclose the '924 patent, the '743 patent**, and patents and applications related to those patents—including the '518 application that eventually led to the '924 patent and the '743 patent—to the IEEE 802.16 working group.
>
> …
>
> 167. The foregoing failure to disclose was made in **bad faith with the intent to deceive and to induce reliance**.

*Id.* at ¶¶ 160-67 (emphasis added). LG again alleges the elements of fraud and alleges that "Ensemble intentionally and knowingly failed to disclose the '924 patent [and] the '743 Patent" because it did not submit a disclosure to IEEE until March 29, 2004. Later in its Answer, LG alleges that this March 29 letter was "signed by Ensemble's Executive Vice President **Sheldon Gilbert**." *Id.* at ¶ 271 (emphasis added). Here, LG ties its allegations of fraud directly to Mr. Gilbert. Specifically, LG alleges that Mr. Gilbert's March 29 letter was an intentional late disclosure of the '924 and '743 Patents, and that this late disclosure (*i.e.*, "nearly five years after the '518 application

was filed with the PTO") constituted fraud. In other words, the alleged fraud arose, in part, because Mr. Gilbert allegedly should have submitted the letter much sooner.

LG's Answer refers back to its fraud allegations against Ensemble based on Mr. Gilbert's alleged failure to make disclosures to IEEE:

> 311. Wi-LAN's misconduct extends to deceptive conduct before the IEEE 802.16 and 3GPP LTE standards bodies. As set forth in detail above, Wi-LAN (and **its predecessors) fraudulently deceived the IEEE**, 3GPP (and 3GPP's Organizational Partners), and their members.
> …
> 332. Through the acts, practices and conduct described herein, Wi-LAN, through its own **conduct** and that **of its predecessors-in-interest Ensemble** and Nextwave, has engaged in unlawful anticompetitive and exclusionary conduct, including through (a) **fraudulent misrepresentations and/or omissions to the IEEE** 802.16 and 3GPP LTE standards bodies, and failure and refusal to abide by its FRAND/RAND licensing commitments made to the IEEE, ETSI, and their members; and (b) bad faith assertion of the Patents-in-Suit against LG and others in an objectively baseless fashion and despite the fact that those patents are invalid and/or unenforceable, or through a continuous campaign to improperly extract licenses, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

*Id.* at ¶¶ 311, 332 (emphasis added). Additional relevant allegations are present throughout LG's Answer. *See id.* at ¶¶ 37, 43, 49, 50, 62, 65, 77, 82, 84, 96, 99, 100, 106, 112, 115, 116, 122, 127, 159, 166, 270, 286, 288, 318, 321.

The Court previously that LG's counterclaims constitute "a **fraudulent FRAND declaration**" theory that "must satisfy Rule 9(b)'s heightened pleading standard … In its counterclaims, LG alleges specific facts providing the **who**, what, when, where and which patents of the **alleged false FRAND declarations**. (Doc. No. 17, **Counterclaims ¶¶ 267-73**.) These allegations are sufficient to satisfy Rule 9(b)." Dkt. 79 at 9 (emphasis added). Two of the seven paragraphs cited by the Court specifically name "Sheldon Gilbert" and specifically identify letters he signed. Dkt. 17 at ¶¶ 270, 271. Thus, LG is accusing Mr. Gilbert of submitting a "fraudulent FRAND declaration" on behalf of Ensemble.

### B.  Mr. Sheldon Gilbert

LG subpoenaed Mr. Gilbert on March 13, 2019. Wi-LAN's counsel emailed Mr. Gilbert and offered to represent him at his deposition free of charge, given that he is an inventor of the asserted '924 and '743 Patents. Such offers of representation are commonplace for an inventor's deposition. Mr. Gilbert declined the offer. A complete record of the written communications between Wi-LAN's counsel and Mr. Gilbert is attached as Exhibit B.

Unbeknownst to Wi-LAN, LG's counsel contacted Mr. Gilbert several times in advance of his deposition. Initially, LG's counsel told Mr. Gilbert that they would not depose him, and that he could disregard their subpoena. Ex. A (Gilbert Depo) at 84:18-20 ("they said, you know, 'We don't really want to -- don't worry about the subpoena. You can ignore it.'"). Later, LG scheduled a follow-up call with Mr. Gilbert and asked him a series of questions to preview his testimony and determine whether to depose him. *Id.* at 86:18-87:1 ("I don't have a clear recollection, but they were generally probing my -- my memory to see how much I remembered … I think they were probing as to whether I remembered much and would it be very worthwhile for me to be deposed was the nature of the questions."). LG never disclosed its counterclaims alleging that the '924 and '743 Patents are invalid, or its SSO fraud-based claims based on the alleged conduct of Ensemble and Mr. Gilbert. *Id.* at 90:8-17 ("Q. At any point during those meetings with LG or any written correspondence, did LG ever tell you that they believed your patents were invalid? A. No. Q. At any point during those meetings with LG or any written correspondence, did they tell you that they believed that you and your colleagues at Ensemble had committed fraud on various standard setting organizations? A. No.").

Mr. Gilbert's deposition occurred on August 29, 2019 in Palo Alto, California. Counsel present were Callie Sand for LG and Eric Enger for Wi-LAN. Mr. Gilbert had not retained any counsel and was unrepresented.

7

During the first deposition break, Mr. Enger accurately informed Mr. Gilbert of LG's allegations that Ensemble and Mr. Gilbert engaged in fraudulent conduct before standard setting organizations, and that LG had alleged Mr. Gilbert's '924 and '743 Patents are invalid. Enger Dec. at ¶ 6. Shortly after the deposition resumed, the following exchange took place:

> A. [Mr. Gilbert] You know, I want to -- all right. I want to interrupt the deposition for a minute if I could. So Wi-LAN counsel mentioned something to me during a break that I may be accused of wrongdoing in this case; is that correct?
>
> Q. [Ms. Sand] All right. So you spoke with Wi-LAN's counsel during the break?
>
> A. He spoke to me in the bathroom, yes.
>
> Q. And what did he say to you?
>
> A. He said that I might be accused of fraud in this case.
>
> MR. ENGER: That's correct. LG has accused you of fraud in this case.
>
> …
>
> Q. [By MS. SAND] Did he tell you anything more about this?
>
> A. No.
>
> Q. Did he give you any specifics about it?
>
> A. No.
>
> Q. What did you say in response to him?
>
> A. "Thank you for letting me know."
>
> Q. Okay.
>
> A. Is that -- is that correct? Am I being accused of something in this case?
>
> MS. SAND: Can we go off record for a bit?
>
> MR. ENGER: Sure.

Ex. A (Gilbert Depo) at 45:18-46:20. The parties took a break that lasted approximately 49 minutes. At the beginning of the break, Ms. Sand presented Mr. Gilbert with a copy of LG's Answer (including LG's counterclaims). Enger Dec. at ¶ 9. Wi-LAN understands that during this break, Mr. Gilbert placed a phone call to a

friend or colleague, who is believed to be an attorney. *See id.* As noted, Mr. Gilbert had a copy of the counterclaims during his call so that if he had any questions about the allegations, he was free to review the actual pleading. The details of that phone call are not known to Wi-LAN. After the break, this occurred:

> Q. All right. Now, during our previous break, Wi-LAN's counsel talked to you during the break, I understand, and told you that you're being accused of fraud?
>
> A. Right.
>
> Q. Wi-LAN is not representing you in this case. You're appearing here today pursuant to a subpoena, correct?
>
> A. That's correct.
>
> Q. All right. Now, we went off the record and talked for a bit, and it's LG's position that we are not personally accusing you of fraud in the case.
>
> A. Okay.
>
> Q. You don't have counsel right now?
>
> A. That's correct.
>
> Q. Wi-LAN's counsel is not representing you. We talked about it for a bit. And you're comfortable answering questions about the inventorship of the patents and these lab notebooks, but we will stay away from any questions about standard setting organizations and leave the deposition open so that you can get counsel if we decide to talk about those issues, correct?
>
> A. That's correct.
>
> Q. Okay.
>
> MR. ENGER: To be clear, Wi-LAN's position is we're not agreeing that the deposition will be kept open. I understand that may be an agree/disagree point.
>
> THE WITNESS: Anything else Wi-LAN, I mean --
>
> MR. ENGER: As we've discussed on the record and off the record, LG is accusing you and your company Ensemble of doing fraudulent things with respect to standard setting organizations. LG is also accusing your patents as being invalid because they should have never issued in the first place. Those are just things that you ought to know whenever you

1    are testifying. That's all I have to say.

2    THE WITNESS: Right. And you both agree I'm not personally a party
     to this dispute currently?
3
4    MS. SAND: Correct.

     MR. ENGER: Yes. It's not -- it's Wi-LAN's position you are not
5    personally a party to this lawsuit.

6    MS. SAND: And it's LG's position that not only are you not a party
     right now, we're not adding you as a party to the lawsuit.
7
8    THE WITNESS: Is that also Wi-LAN's position?

     MR. ENGER: I don't believe Wi-LAN has any intention of adding you
9    as a party to this lawsuit.

10   THE WITNESS: Okay. In that situation, then I'm willing to continue
     with the deposition as you had indicated.
11
12   *Id.* at 47:5-49:12. The deposition resumed.

13       Later that day, Ms. Sand asked Mr. Gilbert additional questions about his

14   conversation with Wi-LAN's counsel:

15   Q. And as a result of that conversation [with Wi-LAN's counsel] you
        came back and indicated you didn't want to testify regarding any
16      FRAND or standard-setting organization topics as a result of the
        conversation with Wi-LAN's attorney, correct?
17
18   A. **<u>No, that's not correct.</u>**

19   Q. Are you willing to testify regarding those topics?

     A. I think I would not like to, at least without counsel. But what I came
20      back and said is that I was concerned that maybe I needed counsel if
        I was a party to the patent, and **<u>then you suggested that you</u>**
21      **<u>wouldn't cover those topics if that made me feel better</u>**, and I said
        it did.
22
23   Q. Okay. So as a result of the conversation with Wi-LAN's attorney,
        you said you were not comfortable covering those topics without
24      having your own counsel to represent you, correct?

25   A. Basically that's what happened, yes.

26   Q. All right. I'm going to leave the deposition open regarding those
        topics if you've indicated you'd like to have counsel representing you
27      before you talk about the FRAND and standard-setting organization

28

                                        10

1    topics.

2    *Id.* at 81:24-82:22 (emphasis added).

3    In sum: Wi-LAN's counsel correctly informed Mr. Gilbert that LG had accused

4    him and his former company of fraud in this lawsuit. Mr. Gilbert asked LG to clarify

5    whether this was true, and he was given a copy of the pleading containing LG's

6    counterclaims. After a break during which Mr. Gilbert is believed to have contacted

7    an attorney by phone, the deposition resumed. LG's counsel informed Mr. Gilbert

8    that "it's LG's position that we are not personally accusing you of fraud in the case."

9    Both Wi-LAN's counsel and LG's counsel informed Mr. Gilbert that he is not a party

10   to the lawsuit. LG's counsel offered to "stay away from any questions about standard

11   setting organizations and leave the deposition open so that you can get counsel if we

12   decide to talk about those issues." Mr. Gilbert accepted LG's offer. As a result, LG's

13   counsel never asked Mr. Gilbert any questions about standard setting organizations.

14   LG never noticed a second deposition of Mr. Gilbert, despite Mr. Gilbert's

15   apparent willingness to sit for another deposition where he would be represented by

16   counsel. *See* Ex. A at 47:25-48:4 ("Q. … we will stay away from any questions about

17   standard setting organizations and leave the deposition open so that you can get

18   counsel if we decide to talk about those issues, correct? A. That's correct.").

19            **C.    LG's Pattern of Threatening Baseless Sanctions**

20   LG's sanctions motion is part of a larger pattern of conduct by LG's counsel.

21   LG's attorneys have routinely threatened Wi-LAN's attorneys with sanctions to avoid

22   litigating the merits of the case. Wi-LAN takes no pleasure in recounting these

23   incidents and has previously refrained from bringing them to the Court's attention.

24   However, Wi-LAN believes it must identify this pattern to provide the Court with a

25   full picture of the context in which LG filed its motion.

26   LG's Answer accuses Wi-LAN of egregious, felonious misconduct. In addition

27   to the fraud allegations discussed above, LG also repeatedly accuses Wi-LAN of

28

1     extortion. *See* Dkt. 17 at ¶ 287 ("Wi-LAN's **extortionate scheme** to extract licensing

2     revenue for patents that Wi-LAN has asserted in bad faith despite knowing them to

3     be invalid and unenforceable") (emphasis added); *id.* at ¶ 329 ("Wi-LAN has

4     nevertheless asserted claims for infringement of the Patents-in-Suit against LG and

5     others as part of a long-standing and ongoing bad faith campaign, including by

6     initiating and maintaining the present objectively baseless litigation, to improperly

7     extract licenses, acquire additional patents, and **extort money** from LG and others")

8     (emphasis added); *id.* at ¶¶ 335, 342 (alleging an "**extortionate scheme**"). LG's

9     answer requests sanctions against Wi-LAN, "including attorneys' fees and

10    disgorgement of Wi-LAN's ill-gotten gains." *Id.* at ¶ 349; *see also id.* at 110 (prayer

11    for relief).

12       In the previous *Wi-LAN v. LG* litigation (No. 3:17-cv-00358), LG sent Wi-

13    LAN at least three emails threatening sanctions over routine issues such as discovery

14    disputes. Ex. C at 1 ("we find Wi-LAN's failure to notify LG troublesome and

15    sanctionable"); Ex. D at 1 ("If Wi-LAN refuses to fix its clear abuses and violations

16    of the rules, LG intends to address the issue with the Court and will seek all

17    appropriate relief."); Ex. E at 2 ("LG intends to seek all appropriate relief, including

18    sanctions, attorneys fees and costs").

19       This pattern continued in the present litigation. On January 18, 2019, Wi-LAN

20    sent LG a letter asking LG to withdraw its inequitable conduct counterclaim and

21    explaining that Wi-LAN intended to file a motion to dismiss. LG's counsel responded

22    by threatening sanctions: "any assertion by Wi-LAN that LG has not adequately

23    pleaded its claim is without merit.  Should Wi-LAN still intend to seek Court

24    intervention, **LG will seek its fees and costs in having to respond to such an**

25    **objectively baseless and frivolous motion**." Ex. F at 1 (emphasis added). LG's

26    threat notwithstanding, Wi-LAN filed its motion to dismiss LG's inequitable conduct

27    counterclaim, and the Court granted it on April 12, 2019. Dkt. 79. This sequence of

28

events is illustrative: (1) LG's Answer included a meritless allegation that Wi-LAN procured a patent through inequitable conduct, (2) before filing its motion to dismiss, Wi-LAN asked LG to withdraw the allegation, (3) LG refused and responded with a threat of sanctions if Wi-LAN proceeded with its motion, and (4) Wi-LAN proceeded and the Court dismissed the inequitable conduct counterclaim.

Unfortunately, LG's threats of sanctions continued. During a discussion about the number or permissible interrogatories, LG's counsel stated "LG intends to move the court to compel Wi-LAN's responses and intends to seek its fees in having to pursue such a motion." Ex. G at 1. In an email requesting that Wi-LAN produce certain documents, LG stated it would file a motion to compel and would "also seek its fees and costs in doing so." Ex H at 6. Wi-LAN had already produced many of the requested documents; LG simply had not found them yet and accused Wi-LAN of withholding them. *See id.* at 3 ("Your email from yesterday threatens to seek sanctions over these documents that were in fact produced long ago").

During another email exchange in which Wi-LAN attempted to schedule the deposition of one of LG's witnesses in Korea, LG's counsel wrote:

> Wi-LAN's and its counsel's discovery abuse has now entered into the frivolous and unreasonable zone of deliberate harassment of LG and its employees … And finally, a word about litigation misconduct, deliberate and vexatious harassment of a party, and frivolous discovery abuse.  The course of events discussed above and below provide another textbook example of all on the part of Wi-LAN and its counsel.   We suggest you familiarize yourself with Rule 11, Rule 26, Rule 37, 28 USC 1927, and 35 USC 285, amongst other relevant rules, regulations, and statutes. At the appropriate time, LG intends to seek its fees and sanctions for Wi-LAN's and its counsel's conduct.

Ex. I at 1-2. In yet another email exchange, Wi-LAN contacted LG's counsel about LG's failure to answer Wi-LAN's interrogatory No. 4, and LG's counsel responded: "should Wi-Lan proceed any further with its meritless position, LG will seek fees and other relief at the appropriate time." Ex. J at 1. When Wi-LAN requested that LG

13

1  produce responsive Android source code in discovery, LG stated it would move to

2  strike any reference to Android source code from Wi-LAN's expert report, and added

3  "LG will seek its costs and fees at the appropriate time for having to bring such a

4  motion." Ex. K at 1. The Court later denied LG's motion to strike the Android source

5  code. Dkt. 170.

6       LG continued its threats on the record during depositions. For example, during

7  the deposition of LG's 30(b)(6) witness Tae-Gon Kong in Korea, Mr. Kong had

8  difficulty answering a question about LG's own disclosures of patents to standard-

9  setting organizations. Another LG representative at the deposition, Mr. Bong Kim,

10  held up a "yellow legal pad with something written on it" in the witness's direction

11  in an attempt to coach the witness while a question was pending. Ex. L at 237:19-

12  238:17; *see also* First Dec. at ¶¶ 6-8. When Wi-LAN's counsel asked the witness

13  about what was written on the legal pad, LG's counsel objected, using profanity and

14  characterizing Wi-LAN's conduct as frivolous:

15
16
    Q. And did you see him hold up that yellow legal pad with something
       written on it in your direction?

17
    A. That yellow pad? Is that something you're talking about?

    Q. Yes, the yellow pad that's sitting in front of Mr. Kim. Did you see
18
       him hold that up in your direction?

19
20
21
22
23
    MR. LUKAS [LG's counsel]: Objection. Objection. Relevance. And I
    mean, where are we going here? I mean, this is -- I've never objected
    this many times in a deposition. **I don't know if you're just trying to**
    **create the shittiest record I've ever seen in my life, but 75 percent of**
    **your questions are highly objectionable. You've just wasted all of**
    **our time.** Can you wrap it up? You said you were not going to go to a
    break. Can we wrap it? Or how much time are you going to need?

24      …

25
26
27
    Just about every other question you've asked, you've asked multiple
    times in this deposition. **And I get it, because you frivolously -- you**
    **said you needed an extra day, and now you're dragging this on with**
    **worthless, objectionable questions.** I get it. But the record is so clear,
    Chris, that you're not going to be able to run from it, buddy, so let's

28

move on.

Ex. L at 238:15-242:2 (emphasis added).[2]

During the deposition of Wi-LAN's validity expert, Dr. Gitlin, LG again threatened sanctions because Wi-LAN would not agree to allow LG to switch attorneys in the middle of questioning Mr. Gitlin (an improper practice known as "tag-teaming"):

> MR. FIRST: Correct. I will not permit the deposition to proceed with a new -- a new attorney questioning Dr. Gitlin.
>
> MR. GILFORD: All right. Understood. LG's position is that there is no authority in the Federal Rules of Civil Procedure for the position Wi-LAN is advancing. The *Finjan* case that Wi-LAN cites to is clearly limited to the -- the typical practice in the Northern District of California. As Wi-LAN is well aware, this case is taking place in the Southern District of California, and Wi-LAN has not provided any authority saying that the Southern District of California requires a single attorney to ask questions during the deposition.
>
> …
>
> With that being said, in order to prevent further delay in this case, I will proceed asking questions. We do believe that **Wi-LAN's position here is factitious and harassing, and we will seek relief further down the road based on that.**

Ex. M at 150:17-151:23 (emphasis added); *Finjan, Inc. v. Cisco Sys. Inc.*, Case No. 17-cv-00072-BLF-SVK, Dkt. No. 354 at 2-3 (Sept. 9, 2019) (the "typical practice" in patent cases in California is for only one attorney to question a witness; permitting "multi-attorney questioning [on] 'unrelated patents'" is disfavored).

As recently as September 23, 2019, LG's counsel sent Wi-LAN's counsel a letter riddled with sanctions threats, demanding that Wi-LAN dismiss its infringement claims (*i.e.,* demanding that Wi-LAN dismiss the whole case):

> If Wi-LAN refuses to voluntarily dismiss its patent infringement claims,

---

[2] When Wi-LAN's counsel asked Mr. Kong if Mr. Kim had held up notes for him to read at any other point in the deposition, Mr. Kong said "I don't know," and he couldn't "possibly remember every single minute that has been spent in this deposition." *Id*. at 239:16-242:12. More abuse from LG's counsel ensued. *Id*.

**LG will seek costs, attorneys' fees, and sanctions** for defending claims that Wi-LAN should not have asserted in the first instance, and that Wi-LAN and its counsel should not continue to litigate. In that event, and because Wi-LAN's and its counsel's continued prosecution of its infringement claims would be **manifestly unreasonable** and constitute a **bad faith, vexatious multiplication of the proceedings**, **LG will seek costs, fees, and sanctions to the fullest extent permitted by FED. R. CIV. P. 11, 37; 28 U.S.C. § 1927; and 35 U.S.C. § 285.**

…

Should Wi-LAN refuse to dismiss its demonstrably unjustified claims, **LG will request that the Court find this to be an exceptional case within the meaning of 35 U.S.C. § 285, seeking reimbursement of its fees and costs incurred. Further, LG will seek sanctions under FED. R. CIV. P. 11, 37 and 28 U.S.C. § 1927.**

Ex. N at 2-4 (emphasis added).

In sum, LG's counsel has threatened Wi-LAN's counsel with sanctions at least **twelve separate times** in this and the previous litigation, not counting LG's present motion for sanctions. This is not zealous advocacy. It is a pattern of irresponsible and unprofessional accusations against fellow members of the bar.

### D.    LG's Present Motion for Sanctions

LG filed its motion for sanctions (Dkt. 162) on September 13, 2019. Although LG's motion concerns alleged discovery conduct, and seeks discovery sanctions including adverse inference sanctions (*see* Fed. R. Civ. P 37), LG did not meet and confer with Wi-LAN before it filed the motion. *See* Local Rule 26.1(a) ("The court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues.").

Wi-LAN asked LG to meet and confer on September 27, 2019. LG's counsel refused to meet and confer, stating: "The deposition record, LG's claims, Wi-Lan's and its counsel's representations regarding those claims, and the relevant law are clear and support LG's motion. Wi-Lan's selective and misleading interpretation of the deposition record does not change that." Ex. O at 1.

### II.    LAW

16

## A.    18 U.S.C. § 1512 Tampering with a Witness, Victim, or an Informant

18 U.S.C. § 1512 is a United States criminal statute that codifies the felony of witness tampering. LG relies on the following provisions of the statute in its motion:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
>
> (1) influence, delay, or prevent the testimony of any person in an official proceeding;
>
> (2) cause or induce any person to—
>
> (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding
>
> …
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512 (b). LG's motion relies on the definition of "misleading conduct" found in 18 U.S.C. § 1515(a)(3): "knowingly making a false statement."

## B.    Cal. Penal Code § 136.1 Intimidation of Witnesses and Victims

Cal. Penal Code § 136.1 is a California criminal statue that codifies the offense of witness intimidation. LG relies on the following provisions of the statute:

> [A]ny person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:
>
> (1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.
>
> (2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

Cal. Penal Code § 136.1(a). "Malice" means "an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." Cal. Penal Code § 136(1).

17

### C.  California Rule of Professional Conduct 4.1

California Rule of Professional Conduct 4.1 states: "In the course of representing a client a lawyer shall not knowingly … make a false statement of material fact or law to a third person."

California Rule of Professional Conduct 4.3(a) states: "In communicating on behalf of a client with a person who is not represented by counsel a lawyer … may, but is not required to, advise the person to secure counsel."

### D.  Local Rule 83.4

Civil Local Rule 83.4(a)(2) states that "An attorney in practice before this court must not … seek sanctions against or the disqualification of any other attorney for any improper purpose."

Civil Local Rule 83.4(b) states: "No attorney permitted to practice before this court will engage in any conduct which degrades or impugns the integrity of the court or in any manner interferes with the administration of justice within the Court."

### E.  28 U.S.C. § 1927 Counsel's Liability for Excessive Costs

28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

### F.  LG's Cases

LG's Motion cites cases that are not even remotely like the facts at hand. They range from:

- bribing a witness (*HomeDirect, Inc. v. H.E.P. Direct, Inc.*, No 10-C-812, 2013 WL 1815979 (N.D. Ill. Apr. 29, 2013); *Lanier v. Greaves*, No. 02-20100-CIV,

2006 WL 680547 (S.D. Fla Mar. 13, 2006); *Synergistics, Inc. v. Hurst*, No. 4:04-CV-318-CDP, 2007 WL 2422871 (E.D. Mo. Aug. 21, 2007)); to

- threatening to sue the witness (*Youngevity Int'l v. Smith*, No. 16-CV-704-BTM-JLB, 2018 WL 747658 (S.D. Cal. Feb. 6, 2018)); to

- disregarding Court orders or repeated Court warnings (*Tesoro Refining & Mktg. Co v. Cal. Finest Oil*, No. 12-Cv-1312, 2016 WL 4269517 (S.D. Cal. Aug. 15 2016); *Barnd v. City of Tacoma*, 664 F.2d 1339 (9th Cir. 1982); *Chambers v. Nasco, Inc.*, 501 U.S. 1269 (1991); *E & J Gallo Winery v. Encana Energy Servs., Inc.*, No. CV-F-03-5412-AWI-LJO, 2005 WL 6408198 (E.D. Cal. July 5, 2005).

Wi-LAN's counsel's actions—accurately informing a deposition witness that the questioning party had accused the witness and his former company of fraud, without in any way attempting to influence or prevent the witness's testimony—are a far cry from the bad actors in LG's cases.

## III.    ARGUMENT

### A.    Wi-LAN's Counsel Did Not Make Any False Statement

LG's motion is predicated on the allegation that "Wi-LAN's counsel engaged in misleading conduct towards Mr. Gilbert." *See, e.g.*, Mot. at 8; *see also* 18 U.S.C. § 1515(a)(3) ("knowingly making a false statement" is an element of the crime of witness tampering).

Wi-LAN's counsel never made a false statement to Mr. Gilbert. He said "LG is accusing you and your company Ensemble of doing fraudulent things with respect to standard setting organizations. LG is also accusing your patents as being invalid because they should have never issued in the first place." Ex. A at 48:13-18. These statements are accurate representations of LG's allegations.[3]

LG's counterclaims include serious allegations of fraud. LG has aimed its fraud allegations, in part, at Mr. Gilbert's conduct, both in his capacity as an inventor of the

---

[3] LG does not dispute it alleged Mr. Gilbert's '924 and '743 Patents are invalid. *See* Dkt. 17 (LG Answer) at ¶¶15-17, 33-35 (LG's invalidity counterclaims for the '924 and '743 Patents).

1  '924 and '743 Patents and in his capacity as a former representative of Ensemble. As

2  discussed *supra*, LG's answer repeatedly identifies "Ensemble," its

3  "representatives," and "one or more of the inventors of the Patents-in-Suit" as the

4  persons who allegedly committed fraud. LG's Answer identifies Mr. Gilbert by name,

5  and identifies a letter signed by Mr. Gilbert as one of the bases for its fraud

6  allegations. Dkt. 17 (LG Answer) at, *e.g.*, ¶¶113-14, 160-67, 188-89, 271, 311, 332.

7      Against this backdrop, it is impossible to understand how LG can justify

8  making statements, such as the following, in a signed motion:

9  - "Of course, LG's counterclaims are ***unrelated*** to the named inventors"

10 - "LG's counterclaims also do not allege that Mr. Gilbert's prior employer
11   Ensemble committed any fraud"

12 - "Wi-LAN's counsel's statements that LG has accused Mr. Gilbert of fraud
     in this case are false"

13 - "LG has also not accused Mr. Gilbert's former employer Ensemble of
14   committing fraud."

15 - "Wi-LAN's counsel must have known that his statements that LG has
     accused Mr. Gilbert of fraud in this case were false."

16
17 Mot. at 5, 6, 9, 10 (emphasis in original); *see also* FED. R. CIV. P. 11(b). The plain

18 language of LG's Answer contradicts LG's statements. *See, e.g.*, Dkt. 17 (LG

19 Answer) at ¶ 188 ("**Ensemble**, Nextwave, and SOMA, and/or **one or more of the

   inventors of the Patents-in-Suit knowingly and in bad faith failed to disclose** the

20 Patents-in-Suit and the patents and applications that led to the Patents-in-Suit **with

21 the intent to deceive and to induce reliance**."); *id.* at ¶ 332 ("**Ensemble** and

22 Nextwave, has engaged in unlawful anticompetitive and exclusionary conduct,

23 including through (a) **fraudulent misrepresentations and/or omissions to the

24 IEEE**") (emphasis added).

25     LG's only basis for its statements appears to be the fact that Mr. Gilbert and

26 Ensemble are not parties to the lawsuit. But this does not change the fact that, as Wi-

27 LAN's counsel put it, LG has accused "[Mr. Gilbert] and [Mr. Gilbert's] company

28

20

Ensemble of doing fraudulent things with respect to standard setting organizations." Ex. A at 48:13-15. Mr. Gilbert was not confused about this during his deposition, because <u>both</u> Wi-LAN's counsel and LG's counsel assured Mr. Gilbert that he was <u>not</u> a party to the lawsuit. *Id.* at 48:21-49:2 ("THE WITNESS: Right. And you both agree I'm not personally a party to this dispute currently? MS. SAND: Correct. MR. ENGER: Yes. It's not -- it's Wi-LAN's position you are not personally a party to this lawsuit."). The issue is not whether Mr. Gilbert is a party (he is not), but whether LG has accused Ensemble and Mr. Gilbert of fraud (it has). And Mr. Gilbert had a copy of LG's pleading so that he could confirm the allegations.

The truth is dispositive of LG's improper allegations of witness tampering, and Wi-LAN's counsel told Mr. Gilbert the truth.

## B. Wi-LAN's Counsel Did Not Intend to Prevent (and Did Not Prevent) the Testimony of Any Person

Another necessary element of LG's allegations is intent to prevent the witness's testimony. *See*, *e.g.*, 18 U.S.C. § 1512 ("intent to influence, delay, or prevent the testimony of any person in an official proceeding" is an element of witness tampering); Cal. Penal Code § 136.1 ("Knowingly and maliciously [attempts to] prevent or dissuade any witness or victim from attending or giving testimony" is a required element of witness intimidation).

Wi-LAN's counsel did not intend to influence, delay, or prevent Mr. Gilbert's testimony. Enger Dec. at ¶ 7. When Mr. Enger arrived at Mr. Gilbert's deposition, he learned that Mr. Gilbert had not retained counsel. *Id.* at ¶ 6. At the first available opportunity (the first deposition break), Mr. Enger informed Mr. Gilbert about the nature of LG's allegations against him and his former employer. *Id.* Mr. Enger correctly believed that Mr. Gilbert would want to know this information so he could make an informed decision about whether to consult with or retain his own counsel. *Id.* at ¶ 7. Mr. Gilbert appreciated this information and thanked Mr. Enger for providing it. Ex. A at 46:14-15 ("Q. What did you say in response to [Mr. Enger]? A.

'Thank you for letting me know.'"). California Rule of Professional Conduct 4.3(a) specifically authorizes an attorney "communicating on behalf of a client with a person who is not represented by counsel" to "advise the person to secure counsel." Mr. Enger provided Mr. Gilbert only with factually correct information about LG's counterclaims. This allowed Mr. Gilbert to make an informed decision about whether to retain counsel.

Furthermore, Wi-LAN's counsel did not prevent any testimony by Mr. Gilbert. LG asked Mr. Gilbert about this directly, and he testified that Wi-LAN's counsel had **not** prevented his testimony. Ex. A at 81:24-82:4 ("Q. And as a result of that conversation you came back and indicated you didn't want to testify regarding any FRAND or standard-setting organization topics as a result of the conversation with Wi-LAN's attorney, correct? **A. No, that's not correct**.") (emphasis added).

Instead, the record shows that **LG's counsel** suggested Mr. Gilbert not testify about these topics, and that Mr. Gilbert accepted that suggestion:

> Q. You don't have counsel right now?
>
> A. That's correct.
>
> Q. Wi-LAN's counsel is not representing you. We talked about it for a bit. And you're comfortable answering questions about the inventorship of the patents and these lab notebooks, but **we will stay away from any questions about standard setting organizations and leave the deposition open so that you can get counsel** if we decide to talk about those issues, correct?
>
> A. That's correct.
>
> Q. Okay.
>
> …
>
> Q. Are you willing to testify regarding those topics?
>
> A. I think I would not like to, at least without counsel. But what I came back and said is that I was concerned that maybe I needed counsel if I was a party to the patent, and **then you suggested that you wouldn't cover those topics if that made me feel better, and I said it did.**

Ex. A at 47:19-48:5, 82:5-12 (emphasis added). After agreeing not to ask the witness questions about standard setting organization topics, LG's counsel stated "I'm going to leave the deposition open regarding those topics if you've indicated you'd like to have counsel representing you before you talk about the FRAND and standard-setting organization topics." *Id.* at 82:18-22.

LG never attempted to ask Mr. Gilbert a question about these topics, and therefore he never refused to answer any questions. Moreover, LG never attempted to take a second deposition of Mr. Gilbert.

Thus, LG has not even tried to obtain the testimony that it now alleges "Wi-LAN's counsel was successful in delaying and preventing." Mot. at 10. To the extent any testimony was delayed, this happened because LG and Mr. Gilbert expressly agreed on the record to defer certain topics to a subsequent deposition (which LG chose not to pursue during discovery). Wi-LAN's counsel did not intend to delay or prevent any testimony, and no testimony was actually delayed or prevented by Wi-LAN's counsel.

## C.    LG's Requested Relief is Unwarranted

LG's motion for sanctions is also improper because it requests relief that is disproportionate and unrelated to the subject matter of its motion. LG requests ten different sanctions, including: "That, should this case go to trial, the jury may be permitted to draw an adverse inference from Wi-LAN's counsel's conduct that Wi-LAN has engaged in standards-setting misconduct, and that Wi-LAN has committed to license the '924 and '743 patents on FRAND/RAND terms and conditions." Mot. at 15.

This is an inexplicable request, because LG's motion argues that its accusations of fraud against Wi-LAN are unrelated to Mr. Gilbert or Ensemble. LG's request for an adverse inference regarding "standard-setting misconduct" is incoherent unless LG alleges that Mr. Gilbert or Ensemble engaged in misconduct at standards-setting

1    organizations. Moreover, why would LG have wanted to ask Mr. Gilbert any
2    questions about "FRAND or standard-setting organization topics" in the first place,
3    unless it was hoping to substantiate its meritless allegations that Mr. Gilbert submitted
4    fraudulent FRAND letters to standard-setting organizations?

5         LG's request for an adverse inference regarding "standard-setting misconduct"
6    belies its arguments that it never accused Mr. Gilbert or Ensemble of fraud.

7    **IV.    CONCLUSION**

8         In light of the foregoing, the Court should deny LG's Motion for Sanctions.

1    Dated: October 1, 2019              By:  */s/ Leslie V. Payne*

2                                        Leslie V. Payne
3                                        TX. Bar No. 00784736 (admitted *pro hac vice*)
                                         lpayne@hpcllp.com
4                                        Eric J. Enger
5                                        TX. Bar No. 24045833 (admitted *pro hac vice*)
                                         eenger@hpcllp.com
6                                        Christopher M. First
7                                        TX. Bar No. 24095112 (admitted *pro hac vice*)
                                         cfirst@hpcllp.com
8                                        Alden G. Harris
9                                        TX Bar No. 24083138 (*admitted pro hac vice*)
                                         aharris@hpcllp.com
10                                       HEIM, PAYNE & CHORUSH LLP
11                                       1111 Bagby St., Suite 2100
                                         Houston, TX 77002
12                                       T: (713)221-2000  F: (713)221-2021

13                                       Victor M. Felix, SBN 179622
14                                       Victor.Felix@procopio.com
15                                       PROCOPIO, CORY, HARGREAVES
                                         & SAVITCH LLP
16                                       525 B Street, Suite 2200
17                                       San Diego, CA 92101
                                         Tel. (619) 515-3229
18                                       Fax (619) 744-5409

19
20                                       Attorneys for Plaintiffs *Wi-LAN*.

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

3          I hereby certify that on October 1, 2019 all counsel of record who are deemed

4  to have consented to electronic service are being served with a copy of this document

5  via the Court's CM/ECF system.

6

7                                          By:    */s/ Leslie V. Payne*
                                                   Leslie V. Payne
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28