# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WI-LAN INC.; WI-LAN USA, INC.; and WI-LAN LABS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LG ELECTRONICS, INC.; LG ELECTRONICS U.S.A., INC; and LG ELECTRONICS MOBILECOMM U.S.A., INC., <br><br> Defendants. | Case No.: 18-cv-01577-H-BGS <br><br> **ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS** <br><br> [Doc. No. 162.] |

On September 13, 2019, Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc. filed a motion for sanctions. (Doc. No. 162.) On October 1, 2019, Plaintiffs Wi-LAN Inc., Wi-LAN USA, Inc., and Wi-LAN Labs, Inc. filed a response in opposition to LG's motion for sanctions. (Doc. No. 197.) On October 1, 2019, the court took the matter under submission. (Doc. No. 200.) On October 8, 2019, LG filed its reply. (Doc. No. 225.) For the reasons below, the Court denies LG's motion for sanctions.

///

///

**Background**

On July 11, 2018, Wi-LAN filed a complaint for patent infringement against LG, alleging infringement of U.S. Patent Nos. 8,787,924, 8,867,351, 9,226,320, and 9,497,743. (Doc. No. 1.) Specifically, Wi-LAN alleges that LG's wireless communication products that are compliant with the 3rd Generation Partnership Project 4G LTE standard directly infringe the patents-in-suit. (Id. ¶¶ 37, 40, 53, 66, 79.)

On October 10, 2018, LG filed an answer to Wi-LAN's complaint along with counterclaims for: (1) declaratory judgments of non-infringement and invalidity of the patents-in-suit; (2) declaratory judgment of unenforceability for failure to disclose to standard setting organizations; (3) declaratory judgment of unenforceability of the '351 patent; (4) declaratory judgment that LG is entitled to license the patents-in-suit on FRAND/RAND terms and conditions; (5) breach of contract; (6) monopolization and attempted monopolization in violation of section 2 of the Sherman Act; and (7) unfair business practices under California Business and Profession Code § 17200 *et seq*. (Doc. No. 17.) On April 12, 2019, the Court granted in part and denied in part Wi-LAN's motions to dismiss LG's counterclaims, and the Court dismissed LG's counterclaim for a declaratory judgment of unenforceability of the '351 patent due to infectious unenforceability with prejudice. (Doc. No. 79.)

Mr. Sheldon Gilbert is one of the named inventors of the '924 patent and the '743 patent. See U.S. Patent No. 8,787,924 (filed Jul. 22, 2014); U.S. Patent No. 9,497,743 (filed Nov. 15, 2016). Mr. Gilbert is also one of the founders of Ensemble Communications Inc., the prior owner of the patents-in-suit. (Doc. No. 211, Ex. A at 14-15.) On May 10, 1999, Mr. Gilbert assigned all of his rights to the '518 application and all continuations thereof, which would include the '924 patent and the '743 patent, to Ensemble. (Doc. No. 162-2, Ex. 1.)

On March 13, 2019, LG subpoenaed Mr. Gilbert to testify at a deposition in this action. (Doc. No. 162-5, Ex. 4.) Mr. Gilbert's deposition took place on August 29, 2019 in Palo Alto, California. (Doc. No. 211, Ex. A.) Mr. Gilbert attended the deposition

unrepresented by counsel. (Id. at 47.)  During, Mr. Gilbert's deposition, the follow exchanges occurred:

> [THE WITNESS:] A. You know, I want to -- all right. I want to interrupt the deposition for a minute if I could.  So Wi-LAN counsel mentioned something to me during a break that I may be accused of wrongdoing in this case; is that correct?
>
> [MS. SAND FOR LG:] Q. All right. So you spoke with Wi-LAN's counsel during the break?
>
> A. He spoke to me in the bathroom, yes
>
> Q. And what did he say to you?
>
> A. He said that I might be accused of fraud in this case.
>
> MR. ENGER [FOR WI-LAN]: That's correct.  LG has accused you of fraud in this case.
>
> (Reporter clarification.)
>
> MR. ENGER: LG has accused you of fraud in this case.
>
> BY MS. SAND:
>
> Q. Did he tell you anything more about this?
>
> A. No.
>
> Q. Did he give you any specifics about it?
>
> A. No.
>
> Q. What did you say in response to him?
>
> A. "Thank you for letting me know."
>
> Q. Okay.

A. Is that -- is that correct? Am I being accused of something in this case?

MS. SAND: Can we go off record for a bit?

MR. ENGER: Sure.

THE VIDEOGRAPHER: Going off record at 11:17 a.m.

(Off the record discussion.)

(Recess.)

(Off record: 11:17 a.m.)

(On record: 12:06 p.m.)

THE VIDEOGRAPHER: On record at 12:06 p.m.

BY MS. SAND:

Q. All right. Now, during our previous break, Wi-LAN's counsel talked to you during the break, I understand, and told you that you're being accused of fraud?

A. Right.

Q. Wi-LAN is not representing you in this case. You're appearing here today pursuant to a subpoena, correct?

A. That's correct.

Q. All right. Now, we went off the record and talked for a bit, and it's LG's position that we are not personally accusing you of fraud in the case.

A. Okay.

Q. You don't have counsel right now?

A. That's correct.

Q. Wi-LAN's counsel is not representing you. We talked about it for a bit. And you're comfortable answering questions about the inventorship of the patents and these lab notebooks, but we will stay away from any questions about standard setting organizations and leave the deposition open so that you can get counsel if we decide to talk about those issues, correct?

A. That's correct.

Q. Okay.

MR. ENGER: To be clear, Wi-LAN's position is we're not agreeing that the deposition will be kept open. I understand that may be an agree/disagree point.

THE WITNESS: Anything else Wi-LAN, I mean --

MR. ENGER: As we've discussed on the record and off the record, LG is accusing you and your company Ensemble of doing fraudulent things with respect to standard setting organizations.

LG is also accusing your patents as being invalid because they should have never issued in the first place. Those are just things that you ought to know whenever you are testifying. That's all I have to say.

THE WITNESS: Right. And you both agree I'm not personally a party to this dispute currently?

MS. SAND: Correct.

MR. ENGER: Yes. It's not – it's Wi-LAN's position you are not personally a party to this lawsuit.

MS. SAND: And it's LG's position that not only are you not a party right now, we're not adding you as a party to the lawsuit.

THE WITNESS: Is that also Wi-LAN's position?

MR. ENGER: I don't believe Wi-LAN has any intention of adding you as a party to this lawsuit.

5

THE WITNESS: Okay. In that situation, then I'm willing to continue with the deposition as you had indicated.

BY MS. SAND:

Q. All right.

(Id. at 45-49.)

[BY MS. SAND:] Q. Just a few more questions. Now, Mr. Gilbert, you spoke with Wi-LAN's counsel during the breaks today, correct?

[THE WITNESS:] A. Yes.

Q. And LG's counsel was not present for all those conversations, correct?

A. It would have been awkward since many of them happened in the men's room, but, yes, that's correct.

Q. And Wi-LAN's counsel is not representing you in the case?

A. They're not.

Q. And during one of those conversations, Wi-LAN's counsel told you, you were being accused of fraud, correct?

A. Yes.

Q. And LG's counsel was not present at this time, correct?

A. That's correct.

Q. And as a result of that conversation you came back and indicated you didn't want to testify regarding any FRAND or standard-setting organization topics as a result of the conversation with Wi-LAN's attorney, correct?

A. No, that's not correct.

Q. Are you willing to testify regarding those topics?

A. I think I would not like to, at least without counsel. But what I came back and said is that I was concerned that maybe I needed counsel if I was a party to the patent, and then you suggested that you wouldn't cover those topics if that made me feel better, and I said it did.

Q. Okay. So as a result of the conversation with Wi-LAN's attorney, you said you were not comfortable covering those topics without having your own counsel to represent you, correct?

6

A. Basically that's what happened, yes.

Q. All right. I'm going to leave the deposition open regarding those topics if you've indicated you'd like to have counsel representing you before you talk about the FRAND and standard-setting organization topics.

(Id. at 81-82.)

[BY MR. ENGER:] Q. So you agreed to meet with LG's attorneys but declined to meet with Wi-LAN's attorneys. Fair?

[THE WITNESS:] A. Well, those are both true statements.

Q. Are you being compensated by LG in any way?

A. Just to clarify, the -- the motivation for the meeting with LG was they said they wanted to know whether they need to depose me; so I agreed to have that questioning in lieu of a deposition.

The emails I received from Wi-LAN suggested they wanted to represent me and wanted to talk about representing me. And I thought it -- number one, I didn't need a counsel since I wasn't a party to this litigation; and, number two, I didn't think it was prudent to have one of the parties of litigation actually representing me.

And so I declined to have the meeting with Wi-LAN because it was about whether they wanted to represent me, and I already told them that I didn't think I needed representation. And I had the meeting with LG because they told me they wanted to know whether they needed to depose me or not.

Q. At any point during those meetings with LG or any written correspondence, did LG ever tell you that they believed your patents were invalid?

A. No.

Q. At any point during those meetings with LG or any written correspondence, did they tell you that they believed that you and your colleagues at Ensemble had committed fraud on various standard setting organizations?

A. No

(Id. at 89-90.) By the present motion, LG moves for sanctions against Wi-LAN and its counsel pursuant to 28 U.S.C. § 1927, the Court's inherent powers, and Civil Local Rule 83.4(b) based on Wi-LAN's counsel's conduct during Mr. Gilbert's deposition. (Doc. No. 162-1 at 1, 8-15.)

7

## Discussion

### I. Legal Standards

#### A. Inherent Powers

A district court has "inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001); see Chambers v. NASCO, 501 U.S. 32, 43 (1991). Before a court may award sanctions under its inherent powers, "the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (quoting Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767 (1980)); accord AntiCancer, Inc. v. Pfizer, Inc., 769 F.3d 1323, 1329 (Fed. Cir. 2014).

"A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" Primus Auto. Fin. Servs., 115 F.3d at 649 (quoting In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996)). "'Mere recklessness does not alone constitute bad faith; rather, an award of attorney's fees is justified when reckless conduct is combined with an additional factor such as frivolousness, harassment, or an improper purpose.'" Ibrahim v. U.S. Dep't of Homeland Sec., 912 F.3d 1147, 1180–81 (9th Cir. 2019) (quoting Rodriguez v. United States, 542 F.3d 704, 709 (9th Cir. 2008)). "A party also demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.'" Primus Auto. Fin. Servs., 115 F.3d at 649 (quoting Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978)).

The Ninth Circuit has explained that "[t]he bad faith requirement sets a high threshold." Primus Auto. Fin. Servs., 115 F.3d at 649. "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Express, 447 U.S. at 764.

#### B. 28 U.S.C. § 1927

Section 1927 provides: "Any attorney . . . who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 sanctions must be supported by a finding of bad faith or recklessness. See B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002), as amended (Feb. 20, 2002); Fink, 239 F.3d at 993.

### C. Civil Local Rule 83.4(b)

Civil Local Rule 83.4(b) provides: "No attorney permitted to practice before this court will engage in any conduct which degrades or impugns the integrity of the court or in any manner interferes with the administration of justice within the Court."

### D. California Rule of Professional Conduct 4.1

California Rule of Professional Conduct 4.1 provides: "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person . . . ."

## II. Analysis

LG's motions for sanctions is based on its contention that Wi-LAN's counsel engaged in false and misleading conduct with respect to Mr. Gilbert during his deposition. (Doc. No. 162-1 at 8-14.) Specifically, LG contends that during the deposition, Wi-LAN's counsel made the knowingly false and misleading statement that LG has personally accused Mr. Gilbert of fraud in this case. (Id. at 8-9.) In response, Wi-LAN argues that its counsel's statements during the deposition were entirely truthful and were not made for any improper purpose. (Doc. No. 197 at 2.)

During Mr. Gilbert's deposition, Wi-LAN's counsel stated: "LG has accused you of fraud in this case;" and "LG is accusing you and your company Ensemble of doing fraudulent things with respect to standard setting organizations." (Doc. No. 211 Ex. A at 46, 48.) In its answer and counterclaim, LG alleges:

> 188. IPWireless, Wi-LAN, Wi-LAN's predecessors-in-interest Ensemble, Nextwave, and SOMA, and/or one or more of the inventors of the Patents-in-Suit, were or are a member of a SSO involved with the setting of a standard (or standards) that WiLAN asserts, or has asserted, is necessarily covered by

9

one or more claims of the Patentsin-Suit. IPWireless, Wi-LAN, Wi-LAN's predecessors-in-interest Ensemble, Nextwave, and SOMA, and/or one or more of the inventors of the Patents-in-Suit participated in the setting of such standard (or standards). Despite this participation, the Patents-in-Suit, and the patents and applications that led to the Patents-in-Suit, including any priority patents and/or applications, were never disclosed to the applicable SSOs. Accordingly, the standards that Wi-LAN asserts, or has asserted, are necessarily covered by one or more claims of the Patents-in-Suit were set without consideration of the Patents-in-Suit, or the patents and applications that led to the Patents-in-Suit. IPWireless, Wi-LAN, Wi-LAN's predecessors-in-interest Ensemble, Nextwave, and SOMA, and/or one or more of the inventors of the Patents-in-Suit knowingly and in bad faith failed to disclose the Patents-in-Suit and the patents and applications that led to the Patents-in-Suit with the intent to deceive and to induce reliance. The foregoing actions and conduct have caused damage and continue to cause damage to LG and relevant third parties.

189. As a result of the conduct described above, the '924 patent, the '743 patent, and the '320 patent are unenforceable against LG on the grounds of estoppel, fraud, waiver, implied waiver, unclean hands, patent exhaustion, implied license, and/or other equitable defenses.

(Doc. No. 17 ¶¶ 188, 189; see also id. ¶¶ 113, 114, 160-67.) Here, LG alleges that that "one or more of the inventors of the Patents-in-Suit[, which could include Mr. Gilbert,] knowingly and in bad faith failed to disclose the Patents-in-Suit and the patents and applications that led to the Patents-in-Suit with the intent to deceive and to induce reliance." (Id. ¶ 188.) LG further alleges that as a result of that alleged conduct, the patents-in-suit are unenforceable due to, among other things, "fraud." (Id. ¶ 189.)

In light of these allegations, the Court declines to find that Wi-LAN's counsel's statements during Mr. Gilbert's deposition were false or misleading.[1] In response, LG argues that it never alleged that Mr. Gilbert personally-by name-committed fraud. (Doc. No. 225 at 2.) The Court recognizes that LG's reference to "one or more of the inventors

---

[1] Further, in light of these allegations, the Court agrees with Wi-LAN that it is perplexing that LG would assert in its motion that: "LG's counterclaims are unrelated to the named inventors;" and "LG's counterclaims also do not allege that Mr. Gilbert's prior employer Ensemble committed any fraud." (Doc. No. 162-1 at 5, 6.)

of the Patents-in-Suit" in its allegations could potentially refer to named inventors other than Mr. Gilbert. But if these allegations were meant to not include Mr. Gilbert, that clarity is not contained in the allegations in LG's answer and counterclaims. And LG has not identified any document in record that would have provided that additional clarity prior to Mr. Gilbert's deposition. To the contrary, in a subsequent filing, LG asserts that "each of the Named Inventors" participated in the relevant standard-setting process. (Doc. No. 217 at 10.) Further, LG characterizes these allegations as "'catch-all' paragraphs." (Doc. No. 225 at 2.)

The Court acknowledge that LG's answer and counterclaims do not include a claim for fraud against Mr. Gilbert personally. (See generally Doc. No. 32) But Wi-LAN's counsel never asserted that LG was bringing a cause of action for fraud against Mr. Gilbert. Indeed, during the deposition, both Wi-Lan's counsel and LG's counsel clarified on the record to Mr. Gilbert that he is not a party in this lawsuit. (Doc. No. 211, Ex. A at 48-49.)) Nevertheless, LG's answer and counterclaims include allegations of fraudulent conduct committed by the inventors of the patents-in-suit, which would include Mr. Gilbert. (See Doc. No. 17 ¶¶ 188, 189.) As a result, the Court declines to find that Wi-LAN's counsel's statements during the deposition were false or misleading, and the Court denies LG's motion for sanctions.

## **Conclusion**

For the reasons above, the Court denies LG's motion for sanctions.

**IT IS SO ORDERED.**

DATED: October 9, 2019

_MARILYN L. HUFF, District Judge_
UNITED STATES DISTRICT COURT