# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

WI-LAN INC.; WI-LAN USA, INC.; and WI-LAN LABS, INC.,

        Plaintiffs,

v.

LG ELECTRONICS, INC.; LG ELECTRONICS U.S.A., INC; and LG ELECTRONICS MOBILECOMM U.S.A., INC.,

        Defendants.

Case No.: 18-cv-01577-H-AGS

**ORDER:**

**(1) GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF OBVIOUSNESS BASED ON IPR ESTOPPEL;**

[Doc. No. 187.]

**(2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PRIORITY DATE AND INVALIDITY UNDER 35 U.S.C. § 102;**

[Doc. No. 188.]

**(3) DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE THE ITO DECLARATION; AND**

[Doc. No. 238.]

**(4) DENYING AS MOOT PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY**

[Doc. No. 268.]

On September 27, 2019, Plaintiffs Wi-LAN Inc., Wi-LAN USA, Inc., and Wi-LAN Labs, Inc. filed and a motion for partial summary judgment of Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc.'s obviousness defense based on *inter partes* review estoppel under 35 U.S.C. § 315(e)(2). (Doc. No. 187.) On September 27, 2019, LG filed a motion for summary judgment that the patents-in-suit are not entitled to their claimed priority dates and for summary judgment of invalidity under 35 U.S.C. § 102. (Doc. No. 188.) On October 11, 2019, the parties filed their respective responses in opposition to the motions for summary judgment. (Doc. Nos. 239, 240.) On October 18, 2019, the parties filed their respective replies. (Doc. No. 265, 266.)

In addition, on October 11, 2019, LG filed a motion to strike the declaration of Richard Ito that was filed as an exhibit to Wi-LAN's motion for partial summary judgment of IPR estoppel. (Doc. No. 238.) On October 14, 2019, Wi-LAN filed a response in opposition to LG's motion to strike. (Doc. No. 251.) On October 18, 2019, Wi-LAN filed a motion for leave to conduct limited discovery. (Doc. No. 268.) On October 23, 2019, LG filed a response in opposition to Wi-LAN's motion for leave. (Doc. No. 277.)

The Court held a hearing on the matters on November 1, 2019. Leslie V. Payne, Eric J. Enger, and Christopher M. First appeared for Wi-LAN. Richard D. Harris, James J. Lukas, and Matthew J. Levinstein appeared for LG. For the reasons below, the Court: (1) grants Wi-LAN's motion for partial summary judgment of LG's obviousness defense based on IPR estoppel; (2) denies LG's motion for summary judgment of priority date and

for summary judgment of invalidity under 35 U.S.C. § 102; (3) denies as moot LG's motion to strike the Ito declaration; and (4) denies as moot Wi-LAN's motion for leave to conduct additional discovery.

## Background

### I. Procedural History

On July 11, 2018, Wi-LAN filed a complaint for patent infringement against LG, alleging infringement of U.S. Patent Nos. 8,787,924, 8,867,351, 9,226,320, and 9,497,743. (Doc. No. 1, Compl.)  Specifically, Wi-LAN alleges that LG's wireless communication products that are compliant with the 3rd Generation Partnership Project 4G LTE standard directly infringe the patents-in-suit.  (Id. ¶¶ 37, 40, 53, 66, 79.)

On October 10, 2018, LG filed an answer to Wi-LAN's complaint along with counterclaims for: (1) declaratory judgments of non-infringement and invalidity of the patents-in-suit; (2) declaratory judgment of unenforceability for failure to disclose to standard setting organizations; (3) declaratory judgment of unenforceability of the '351 patent due to infectious unenforceability; (4) declaratory judgment that LG is entitled to license the patents-in-suit on FRAND/RAND terms and conditions; (5) breach of contract; (6) monopolization and attempted monopolization in violation of section 2 of the Sherman Act; and (7) unfair business practices under California Business and Profession Code § 17200 *et seq*.  (Doc. No. 17.)

On April 12, 2019, the Court granted in part and denied in part Wi-LAN's motions to dismiss LG's counterclaims, and the Court dismissed with prejudice LG's counterclaim for declaratory judgment of unenforceability of the '351 patent due to infectious unenforceability.  (Doc. No. 79.)  On May 28, 2019, the Court issued a claim construction order in the action.  (Doc. No. 112.)  On September 3, 2019, the Court issued an amended scheduling order.  (Doc. No. 143.)

On October 24, 2019, the Court issued an order on the parties' first set of motions for summary judgment.  (Doc. No. 278.)  Specifically, the Court: (1) denied LG's two motions for summary judgment of non-infringement of the patents-in-suit; (3) granted

LG's motion for summary judgment of no willful infringement; (4) granted in part and denied in part LG's motion for summary judgment of its patent exhaustion defense; (5) denied Wi-LAN's cross-motion for summary judgment of no patent exhaustion based on the Qualcomm-SOMA agreements; and (6) granted Wi-LAN's motion for summary judgment of LG's standard development organization defenses and counterclaims. (Id. at 79.) In so doing, the Court granted summary judgment in favor of LG on: (1) Wi-LAN's claim for willful infringement of the patents-in-suit; and (2) LG's patent exhaustion defense as to the '351 patent based on the 2000 Qualcomm-SOMA agreement. (Id.) And the Court granted summary judgment in favor of Wi-LAN on: (1) LG's defense and counterclaim of unenforceability for failure to disclose to standard setting organizations; (2) LG's defense and counterclaim that LG is entitled to license the patents-in-suit on FRAND/RAND terms and conditions; (3) LG's counterclaim for monopolization; (4) LG's counterclaim for attempted monopolization; and (5) LG's counterclaim for unfair business practices under California's UCL. (Id.)

By the present remaining motions for summary judgment: (1) Wi-LAN moves for partial summary judgment of LG's obviousness defense as to the '743 patent based on IPR estoppel under 35 U.S.C. § 315(e)(2); and (2) LG moves for summary judgment that the asserted claims of the patents-in-suit are not entitled to their claimed priority dates, and, therefore, are invalid under 35 U.S.C. § 102. (Doc. No. 187-1 at 1; Doc. No. 188-1 at 1.)

## II.     The Patents-in-Suit

In the present action, Wi-LAN asserts infringement of claims 1, 2, 5, 6, 17, and 19 of the '924 patent, claims 6-9 of the '743 patent, and claims 7 and 10-12 of the '351 patent.[1] (Doc No. 207, Ex. 2 Lomp Expert Report ¶¶ 78, 86, 100, 114, 184, 256.)

---

[1]     Although Wi-LAN alleges infringement of the '320 patent in the complaint, Wi-LAN does not currently assert infringement of any of the claims from that patent in this action. (See generally Doc No. 207, Ex. 2 Lomp Expert Report.) On July 22, 2019, the Patent Trial and Appeal Board issued a final written decision in the *inter partes* review proceedings for the '320 patent, concluding that claims 1, 3, 4, 8-10, 12, 15-17, 20, 21, 25, 27, and 30 of the '320 patent are unpatentable on obviousness grounds. See

A.    The '924 Patent and the '743 Patent

The '924 patent and the '743 patent are both entitled "Method and Systems for Transmission of Multiple Modulated Signals Over Wireless Networks" and share a common specification.  U.S. Patent No. 8,787,924, at (54) (filed Jul. 22, 2014); U.S. Patent No. 9,497,743, at (54) (filed Nov. 15, 2016).  The invention disclosed in the '924 patent and the '743 patent "relates to wireless communication systems, and more particularly to a method and apparatus for efficiently allocating bandwidth between base stations and customer premises equipment in a broadband wireless communication system."  '924 Patent at 1:23-27.  Independent Claim 1 and independent claim 17 of the '924 patent are the only asserted independent claims from that patent, and independent claim 6 of the '743 patent is the only asserted independent claim from that patent.

Independent claim 1 of the '924 Patent provides:

1. A method of operating a wireless cellular mobile unit registered with a base station in a bandwidth on demand wireless cellular communication system, the method comprising:

transmitting from the wireless cellular mobile unit a one bit message requesting to be provided an allocation of uplink (UL) bandwidth in which to transmit a bandwidth request for at least one connection served by the wireless cellular mobile unit;

receiving at the wireless cellular mobile unit the allocation of UL bandwidth in which to transmit the bandwidth request, the allocation of UL bandwidth received pursuant to the one bit message;

transmitting from the wireless cellular mobile unit the bandwidth request within the allocation of UL bandwidth, the bandwidth request being indicative of a pending amount of UL data associated with the at least one connection;

receiving at the wireless cellular mobile unit an UL bandwidth grant for the wireless cellular mobile unit, the UL bandwidth grant received pursuant to the bandwidth request; and

allocating the received UL bandwidth grant to at least two UL connections served by the wireless cellular mobile unit, based on a QoS parameter of the

LG Electronics, Inc. v. Wi-LAN Incs., Case No. IPR 2018-00705, Paper No. 36 at 55 (P.T.A.B. Jul. 22, 2019).

at least two UL connections.

Id. at 22:42-67.

Independent claim 17 of the '924 Patent provides:

A method of allocating uplink (UL) bandwidth on demand in a wireless communication network, wherein a wireless cellular mobile unit is registered with, and communicating with a base station, the method comprising:

transmitting from the wireless cellular mobile unit a one bit message to the base station to request an allocation of UL bandwidth in which to transmit a bandwidth request;

receiving at the wireless cellular mobile unit the allocation of UL bandwidth in which to transmit the bandwidth request;

transmitting to the base station, within the allocation of UL bandwidth, the bandwidth request indicative of an amount of pending UL data;

receiving from the base station an UL bandwidth grant for the wireless cellular mobile unit; and

transmitting to the base station UL data of the pending UL data pursuant to the UL bandwidth grant;

wherein the transmitted UL data is transmitted for at least two UL services and wherein the UL data is transmitted for the at least two UL services based on a QoS parameter of a respective service from the at least two UL services.

Id. at 24:19-40.

Independent claim 6 of the '743 Patent provides:

A cellular telephone operable to communicate with a base station in a wireless communication system, the cellular telephone comprising:

one or more processors having a Media Access Controller (MAC) operable to queue data pertaining to a first uplink (UL) connection between the cellular telephone and the base station, the data associated with a respective priority; and

a transceiver operable to

transmit a message requesting the base station to poll the cellular telephone,

in response to the message, receive an indication of a first UL transmission resource,

transmit information to the base station within the first UL transmission resource, the information indicative of an amount of data awaiting

6

transmission to the base station over the first UL connection between the cellular telephone and the base station, and

receive, in downlink control information, an allocation of a second UL transmission resource for the cellular telephone in response to the information indicative of an amount of data awaiting transmission to the base station over the first UL connection between the cellular telephone and the base station.

'743 Patent at 24:53-25:9.

B.    The '351 Patent

The '351 Patent is entitled "apparatus, system and method for the transmission of data with different QoS attributes." U.S. Patent No. 8,867,351, at (54) (filed Oct. 21, 2014). The invention disclosed in the '351 patent "relates to an apparatus, system and method for providing and managing QoS for data flows transmitted over at least one link in a data network capable of transmitting data with different [quality of service] QoS requirements and/or attributes." Id. at 1:21-26.   Independent claim 7 of the '351 patent is the only asserted independent claim from that patent.

Claim 7 of the '351 patent claims:

1. A mobile device for transmitting data using a data transmission capacity, comprising:

a link controller operable to:

operate a plurality of logical channel queues for transmitting data, each of the logical channel queues is capable of being associated with a priority and a traffic shaping rate,

select, from the plurality of logical channel queues, a highest priority logical channel queue having data available for transmission and whose traffic shaping rate is not reached,

allocate a portion of the data transmission capacity to the selected logical channel queue, wherein the allocated portion is limited by the traffic shaping rate associated with the selected logical channel queue, by the data available for transmission in the selected logical channel queue, and by the data transmission capacity,

repeatedly consider a next highest priority logical channel queue to select and allocate, until at least one of: the data transmission capacity is exhausted, and each one of the plurality of logical channel queues is considered, and

thereafter

allocate a remaining portion, if any, of the data transmission capacity to one or more of the logical channel queues having data for transmission, selected in priority order; and

a radio transceiver for transmitting and receiving data, wherein the radio transceiver transmits the data according to the link controller allocation.

'351 Patent at 14:31-59.

**Discussion**

**I.    Legal Standards for a Motion for Summary Judgment**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial.  Id. at 322-23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015).  Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by

affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. "The evidence of the non-movant is to be believed." Id. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

## II. Wi-LAN's Motion for Partial Summary Judgment of IPR Estoppel

Wi-LAN moves for partial summary judgment of LG's obviousness defense as to the '743 patent. (Doc. No. 187-1 at 12.) Specifically, Wi-LAN argues that 35 U.S.C. § 315(e)(2) estops LG from asserting invalidity of the '743 patent based on all of its asserted obviousness combinations because LG reasonably could have raised them in the *inter partes* review proceedings for that patent. (Id. at 1.) In response, LG argues that Wi-LAN's motion should be denied because invalidity grounds that are not instituted as part of an IPR are not estopped under § 315(e)(2). (Doc. No. 239 at 1.)

### A. Relevant Background

On February 22, 2018, LG filed a petition for *inter partes* review of the '743 patent with the Patent Trial and Appeals Board, arguing that claims 1-4 and 6-9 of the '743 patent should be cancelled as unpatentable. (Doc. No. 187-3, Ex. 1.) On September 6, 2018, the PTAB issued a decision granting institution of *inter partes* review "as to all of the

challenged claims of the '743 patent" on the sole ground asserted in the petition: whether the challenged claims "are unpatentable as obvious over the combination of Hulyalkar and Agrawal." (Doc. No. 187-4, Ex. 2 at 2, 29-30.) On October 1, 2018, Wi-LAN filed a disclaimer of claims 1-5 of the '743 patent with the PTO, leaving claims 6-9 as the remaining claims in the IPR. (Doc. No. 239-2, Ex. A.) On September 5, 2019, the PTAB issued a final written decision in the IPR finding that LG "ha[d] not demonstrated by a preponderance of the evidence that claims 6-9 of U.S. Patent No. 9,497,743 are unpatentable." (Doc. No. 187-5, Ex. 3 at 29.)

On September 20, 2019, pursuant to the Court's July 1, 2019 order granting the parties' joint motion to limit the number of asserted claims and prior art in this action, LG reduced its number of invalidity references down to five specific obviousness combinations as to the '743 patent. (Doc. No. 187-11, Ex. 9; see also Doc. No. 119.) Consistent with this, LG's invalidity expert asserted invalidity of the '743 patent under § 103 based on only those five obviousness combinations. (Doc. No. 188-5, Ex. 2 Proctor Expert Report ¶¶ 118, 288-378.)

LG's five obviousness combinations as to the '743 patent are summarized in Table I below:

**Table I**

| Combination # | Combination |
|---|---|
| 1 | Chuah and Kari |
| 2 | DOCSIS and Eng |
| 3 | Fischer and Sigle |
| 4 | Karol and Sigle |
| 5 | Fischer and Karol and Sigle |

Each of the above obviousness grounds is based on a combination of various patents and/or printed publications.[2]  (See Doc. No. 187-8 at 5-32 (LG's invalidity contentions listing these prior art references under the header "Patents/Published Patent Applications/Publications")).  The first two obviousness combinations – "Chuah and Kari" and "DOCSIS and Eng" – were first asserted on October 20, 2017 and January 16, 2018, respectively, when LG served Wi-LAN with its infringement contentions in the prior action.  (See Doc. No. 187-6, Ex. 4 at 17, 18, 19; Doc. No. 187-7, Ex. 5 at 27-28.)  The last three obviousness combinations – "Fischer and Sigle," "Karol and Sigle," and "Fischer and Karol and Sigle" – were first asserted on January 25, 2019, when LG served Wi-LAN with its infringement contentions in this action.  (Doc. No. 187-8, Ex. 6 at 15, 17, 18.)

B.     Legal Standards for IPR Estoppel

Section 315(e)(2) of the Patent Act states:

> The petitioner in an *inter partes* review of a claim in a patent under this chapter that results in a final written decision . . . may not assert . . . in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review.

35 U.S.C. § 315(e)(2).  In an IPR, a petitioner is limited to challenging patent claims as invalid only on grounds "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."  35 U.S.C. § 311(b).  Thus, section 315(e)(2) estoppel applies when: (1) a final written decision is issued in an IPR; (2) the contention at issue asserts invalidity under §§ 102 or 103 based only on prior art

---

[2]     "Chuah" refers to U.S. Patent No. 6,115,390.  "Kari" refers to U.S. Patent No. 6,603,738.  "DOCSIS" refers to DOCSIS Data-Over-Cable Service Interface Specifications, SP-RFIv1.1-I04-980724 ("DOCSIS 1998") and DOCSIS Data-Over-Cable Service Interface Specifications, SPRFIv.1.1-101-990311 ("DOCSIS 1999").  "Eng" refers to U.S. Patent No. 5,751,708 issued to Kai Yin Eng and Mark Karol Fischer refers to Fischer et al., "MAC Protocol for a CDMA Based Wireless ATM LAN," Proceedings of ICC '97—International Conference on Communications.  "Sigle" refers to Sigle et al., "Impact of Wireless Access on Traffic Management in ATM Networks," Computer Networks: The International Journal of Computer and Telecommunications Networking, Vol. 31, Issue 9-10.  "Karol" refers to Karol et al., "Distributed-Queuing Request Update Multiple Access (DQRUMA) for Wireless Packet (ATM) Networks," Proceedings of ICC '95—International Conference on Communications.  (Doc. No. 187-8, Ex. 6 at 15, 17, 18, 20-21, 22, 32; Doc. No. 239 at 2-3.)

consisting of patents or printed publications; and (3) the contention at issue either was raised or reasonably could have been raised during the IPR.

As an initial matter, the parties dispute the proper interpretation of the phrase "could have raised during that *inter partes* review." LG argues that the Federal Circuit's decision in Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc. 817 F.3d 1293, 1300 (Fed. Cir. 2016), prevents the application of estoppel under § 315(e)(2) on grounds not raised in the IPR. (Doc. No. 239 at 4-5.) The Court disagrees.

Shaw involved an appeal from a PTAB decision to only partially institute an IPR. The PTAB had partially denied institution of an IPR on the basis that certain prior art grounds in the IPR petition were "redundant." Id. at 1297. In the decision, the Federal Circuit first concluded that the PTAB's decision to partially grant IPR institution as to only certain grounds and deny institution of other grounds in a petition was unappealable. Id. at 1299 ("We have no authority . . . to review the Board's decision to institute IPR on some but not all grounds."). The Federal Circuit then commented that, as to the "redundant" invalidity grounds where the PTAB denied IPR institution (*i.e.*, the unappealable portion of the decision with no resulting final written decision), IPR estoppel would not attach. Id. at 1300. Relying on an interpretation of the plain language of § 315(e)(2), the Federal Circuit reasoned that the non-instituted ground was not a ground raised or that reasonably could have been raised "during that *inter partes* review" because "[t]he IPR does not begin until it is instituted." Id.; see also HP Inc. v. MPHJ Tech. Inv., LLC, 817 F.3d 1339, 1347 (Fed. Cir. 2016) (interpreting the analogous estoppel provision that applies to Patent Office proceedings, Section 315(e)(1), and concluding that the estoppel provision of § 315(e)(1) "do not apply" to non-instituted grounds).

LG argues that under Shaw, IPR estoppel only applies to the grounds that were actually considered during the IPR. (Doc. No. 239 at 4.) LG further argues, therefore, IPR estoppel does not apply to non-petitioned grounds. (Id.) In response, Wi-LAN argues that multiple courts have rejected LG's interpretation of § 315(e)(2) in light of the Supreme Court's recent decision in SAS Inst., Inc. v. Iancu, 138 S. Ct. 1348 (2018). (Doc. No. 265

at 1-2.)

In SAS, the Supreme Court interpreted 35 U.S.C. § 318(a) and held that if an IPR is instituted, the PTAB "must address every claim the petitioner has challenged." 138 S. Ct. at 1354. In so holding, the Court explained that § 318(a) forbids the PTAB's partial institution practice of instituting review as to only certain claims challenged in an IPR petition. See id. at 1355-59. As a result, if the PTAB grants an IPR petition, the PTAB must now institute review on all claims and all grounds. See id.; BioDelivery Sci. Int'l, Inc. v. Aquestive Therapeutics, Inc., 898 F.3d 1205, 1209-10 (Fed. Cir. 2018) ("We agree that SAS requires institution on all challenged claims and all challenged grounds."); PGS Geophysical AS v. Iancu, 891 F.3d 1354, 1360 (Fed. Cir. 2018). Indeed, "[i]n the wake of the SAS decision, the Patent and Trademark Office issued a 'guidance' in April 2018 announcing that any petition instituted would be instituted on all claims and all grounds raised." Palomar Techs., Inc. v. MRSI Sys., LLC, 373 F. Supp. 3d 322, 328 (D. Mass. 2019) (citing U.S. Patent & Trademark Office, Guidance on the Impact of SAS on AIA Trial Proceedings (Apr. 26, 2018), https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/trials/guidance-impact-sas-aia-trial).

In light of the Supreme Court's clarification of § 318(a), LG's argument that IPR estoppel does not apply to non-petitioned grounds is untenable. SAS rendered the circumstances addressed by the Federal Circuit in Shaw a nullity. There can no longer be such a thing as a non-instituted ground, i.e., a ground raised in an IPR petition that the PTAB declines to review when granting institution of the IPR. As such, for the phrase "reasonably could have been raised during that inter partes review" in 35 U.S.C. § 315(e)(2) to have any meaning, it must refer to grounds that were not actually in the IPR petition, i.e., non-petitioned grounds, but "reasonably could have been" included in the petition. See Palomar Techs., 373 F. Supp. 3d at 331. As a result, the Court rejects LG's contention that IPR estoppel does not apply to non-petitioned grounds. See, e.g., Nielsen v. Preap, 139 S. Ct. 954, 969 (2019) (rejecting an interpretation of a statute that "flouts the interpretive canon against surplusage—the idea that 'every word and every provision is to

be given effect'").

Indeed, every post-SAS district court decision the Court has found addressing IPR estoppel and Shaw has rejected the contention that IPR estoppel does not apply to non-petitioned grounds. See, e.g., Palomar Tech., 373 F. Supp. 3d at 328-29, 331; Am. Tech. Ceramics Corp. v. Presidio Components, Inc., No. 14CV6544KAMGRB, 2019 WL 365709, at *3–5 (E.D.N.Y. Jan. 30, 2019); California Inst. of Tech. v. Broadcom Ltd., No. CV 16-3714 GW (AGRX), 2018 WL 7456042, at *4–8 (C.D. Cal. Dec. 28, 2018); Trustees of Columbia Univ. v. Symantec Corp., 390 F. Supp.3d 665, 676-81 (E.D. Va. 2019); SiOnyx, LLC v. Hamamatsu Photonics K.K., 330 F. Supp. 3d 574, 599–601 (D. Mass. 2018). In particular, the Court finds the analysis presented in the Cal. Inst. of Tech. v. Broadcom Ltd. and Trustees of Columbia Univ. v. Symantec Corp. decisions well-reasoned and persuasive. See 2018 WL 7456042, at *4–8; 390 F. Supp. 3d at 676-81. And LG has not provided the Court with any post-SAS case law to the contrary.[3]

As such, under § 315(e)(2), LG is estopped from claiming invalidity on any non-petitioned ground that it "reasonably could have raised" in its IPR petition. Courts have interpreted the phrase "reasonably could have raised" to mean "any patent or printed publication that a petitioner actually knew about or that 'a skilled searcher conducting a diligent search reasonably could have been expected to discover.'" Palomar Techs., 373

---

[3] LG argues that it is unfair to apply the Supreme Court's decision in SAS against it because SAS was issued after the deadline passed for LG to amend its IPR petition or file additional IPR petitions against the '743 patent. (Doc. No. 239 at 6-7.) The Court rejects this argument. Even if the Supreme Court never issued SAS, LG would still be unable to rely on Shaw.

Here, unlike in Shaw, LG's IPR petition was granted as to all claims and on all grounds raised in the petition. (See Doc. No. 187-4, Ex. 2 at 2, 29-30.) As such, there were no non-instituted grounds in LG's IPR proceedings. Thus, Shaw's holding is inapplicable to LG's circumstances. See Douglas Dynamics, LLC v. Meyer Prod. LLC, No. 14-CV-886-JDP, 2017 WL 1382556, at *5 (W.D. Wis. Apr. 18, 2017) (Following Shaw, "this court will not apply § 315(e)(2) estoppel to non-instituted grounds, but it will apply § 315(e)(2) estoppel to grounds not asserted in the IPR petition, so long as they are based on prior art that could have been found by a skilled searcher's diligent search.); Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co., No. 15-CV-1067, 2017 WL 3278915, at *6–9 (N.D. Ill. Aug. 2, 2017); Biscotti Inc. v. Microsoft Corp., No. 213CV01015JRGRSP, 2017 WL 2526231, at *4–7 (E.D. Tex. May 11, 2017).

F. Supp. 3d at 331; <u>California Inst. of Tech.</u>, 2018 WL 7456042, at *8; <u>Tinnus Enterprises, LLC v. Telebrands Corp.</u>, No. 6:17-CV-00170-RWS, 2018 WL 3993468, at *3 (E.D. Tex. Aug. 21, 2018); <u>Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.</u>, No. CV 13-2072 (KAJ), 2017 WL 1045912, at *11 (D. Del. Feb. 22, 2017); <u>Douglas Dynamics</u>, 2017 WL 1382556, at *5; <u>see also, e.g.</u>, <u>Apotex Inc., v. Wyeth LLC</u>, No. IPR2015-00873, 2015 WL 5523393, at *4 (P.T.A.B. Sept. 16, 2015). The party asserting estoppel bears the burden to show that estoppel applies. <u>Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.</u>, No. 15 C 1067, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019); <u>see Palomar Techs.</u>, 373 F. Supp. 3d at 332; <u>f'real! Foods, LLC v. Hamilton Beach Brands, Inc.</u>, No. CV 16-41-CFC, 2019 WL 1558486, at *1 (D. Del. Apr. 10, 2019).

C.  <u>Analysis of Combinations One and Two</u>

Wi-LAN argues that LG should be estopped from asserting its first two obviousness combinations –"Chuah and Kari" and "DOCSIS and Eng" – as to the '743 patent because LG knew of these grounds before it filed its IPR petition. (Doc. No. 187-1 at 6.) To support this argument, Wi-LAN points to LG's invalidity contentions in the prior action. (<u>Id.</u>)

LG's invalidity contentions in the prior action identified Chuah, Kari, DOCSIS, and Eng as prior art references and identified these two specific obviousness combinations. (<u>See</u> Doc. No. 187-6, Ex. 4 at 17, 18, 19, chart at 46; Doc. No. 187-7, Ex. 5 at 27-28, chart at 87.) These invalidity contentions were served on October 20, 2017 and January 16, 2018, respectively, prior to the filing of LG's IPR petition on February 22, 2018. (<u>Id.</u>) Several district courts have held that the identification of prior art in invalidity contentions generated prior to the filing of the IPR petition is sufficient to establish as matter of law that the accused infringer knew of those prior art references, and, thus, that the references "reasonably could have [been] raised" in the IPR. <u>See, e.g.</u>, <u>Trustees of Columbia Univ.</u>, 390 F. Supp. 3d at 678 (granting motion for summary judgment of IPR estoppel based on the invalidity grounds at issue being previously identified in invalidity contentions); <u>Polaris Indus., Inc. v. Arctic Cat Inc.</u>, No. CV 15-4475 (JRT/TNL), 2019 WL 3824255, at *3 (D. Minn. Aug. 15, 2019) (same); <u>Parallel Networks Licensing</u>, 2017 WL 1045912, at *11-12

(same); <u>Douglas Dynamics</u>, 2017 WL 1382556, at *5.  LG offers no argument in response on this issue.  (<u>See generally</u> Doc. No. 239.)  As such, LG is estopped under § 315(e)(2) from asserting that the '743 patent is invalid based on obviousness in light of the "Chuah and Kari" and the "DOCSIS and Eng" combinations.

### D.  Analysis of Combinations Three, Four, and Five

Wi-LAN also contends that LG should be estopped from asserting its last three obviousness combinations – "Fischer and Sigle," "Karol and Sigle," and "Fischer and Karol and Sigle" – because LG would have found these prior art references through a diligent search.  (Doc. No. 187-1 at 7-12.)  In response, LG argues that there is at least triable issue of fact as to whether it could have raised the references at issue during the IPR.  (Doc. No. 239 at 7-12.)

Under the skilled searcher standard, in order to establish that these obviousness combinations could have been raised in the IPR, Wi-LAN must show "that a skilled searcher conducting a diligent search reasonably could have been expected to discover" the references at issue.  <u>Palomar Techs.</u>, 373 F. Supp. 3d at 331; <u>California Inst. of Tech.</u>, 2018 WL 7456042, at *8.  Here, Wi-LAN argues that the fact that LG eventually found the three refences at issue through a prior art search is compelling evidence itself that LG reasonably could have discovered these references through a diligent search.  (Doc. No. 265 at 3.)  The Court agrees.

LG's own evidence, a declaration from LG's counsel, states that LG discovered Fischer, Karol and Sigle after it conducted a search for potential prior art.  (Doc. No. 239-1, Lukas Decl. ¶ 7.)  Evidence that LG discovered these references through a prior art search is clear evidence that LG reasonably could have discovered these references through a diligent search.  This is evidence, even when viewed in the light most favorable to LG, is sufficient to establish that LG "reasonable could have raised" its obviousness contentions based on those references in the IPR.

The Court acknowledges that the declaration states that LG's counsel did not come into possession of these references until January 17, 2019.  (<u>Id.</u>)  And the Court notes the

declaration does not state when this prior art search was performed, and when LG itself came into possession of the references. (See id.) But even assuming the search was performed in January 2019, LG has not identified any barriers or difficulties that would cause the prior art search at issue to produce different results had it been ran a year earlier, prior to the filing of its IPR petition.

In addition, there is evidence in the record showing that Karol, Fischer, and Sigle could have been found through a reasonable search via the IEEE Xplore tool. (See Doc. No. 187-19, Ex. 17; Doc. No. 187-23, Ex. 21.) And there is further evidence in the record showing that the IEEE Xplore Digital Library was a tool utilized by LG to discover prior art used in its IPR. (See Doc. No. 187-20, Ex. 18 Hsieh-Yee Decl. ¶¶ 3-10.)

Further, with respect to Karol, Karol is cited in four prior art references that were contained in LG's invalidity contentions in the prior action, which were served prior to the filing of LG's IPR petition. (Doc. No. 187-2, First Decl. Exs. 11, 12, 13, 14; see id. Ex. 5 at 10, 18-19, Chart at 37-68.) One of those references is "Chuah," a reference that LG's invalidity expert opined on and that LG selected as one of its final 20 references in this case. (Doc. No. 188-5, Ex. 2 Proctor Expert Report ¶¶ 118, 288-307; Doc. No. 187-11, Ex. 9.) In addition, Karol is a co-inventor on the "Eng" reference. U.S Patent No. 5,751,706 (filed May 12, 1998). "Eng" is also a reference that LG's invalidity expert opined on and that LG selected as one of its final 20 references in this case. (Doc. No. 188-5, Ex. 2 Proctor Expert Report ¶¶ 118, 308-318; Doc. No. 187-11, Ex. 9.) Further, there is unrebutted expert testimony in the record opining that the relevant disclosures in Karol are identical to the relevant disclosures in Eng. (Doc. No. 255, Gitlin Expert Report ¶ 383.) Finally, both Fischer and Sigle cite to Karol. (Doc. No. 187-2, First Decl. Exs. 19, 20.) This additional evidence provides further support for the conclusion that LG could have found these references though a reasonably diligent search.

In sum, Wi-LAN has proven as a matter of law that Fischer, Sigle, and Karol could have been discovered through a reasonably diligent search and could have been raised in LG's IPR petition. As such, LG is estopped under § 315(e)(2) from asserting that the '743

patent is invalid based on obviousness in light of the "Fischer and Sigle," the "Karol and Sigle," and the "Fischer and Karol and Sigle" obviousness combinations.

### E.    Conclusion

In sum, the Court grants Wi-LAN's motion for partial summary judgment of LG's obviousness defense based on IPR estoppel under 35 U.S.C. § 315(e)(2). Specifically, the Court grants summary judgment in favor of Wi-LAN on LG's defense and counterclaim of invalidity of the '743 patent based on obviousness under the "Chuah and Kari," "DOCSIS and Eng," "Fischer and Sigle," "Karol and Sigle," and "Fischer and Karol and Sigle" obviousness combinations.[4]

## III.   LG's Motion for Summary Judgment that the Claims of the Patents-in-Suit are Not Entitled to Their Claimed Priority Dates and that the Claims are Invalid Under 35 U.S.C. § 102

LG moves for summary judgment that all of the asserted claims of the patents-in-suit are invalid under 35 U.S.C. § 102 as anticipated by Release 8 of the 3GPP LTE Standard. (Doc. No. 188-1 at 1.) To support this contention, LG also moves for summary judgment that the asserted claims of the patents-in-suit are not entitled to their claimed priority dates and are instead entitled to priority dates no earlier than the respective filing dates of the applications for the patents-in-suit: October 11, 2012, June 12, 2015, and May 30, 2014, respectively. (Id. at 1, 18.) LG explains that once the asserted claims are given their filing dates as their priority dates, it is clear that all of the claims are anticipated by

---

[4]    On October 11, 2019, LG filed a motion to strike the declaration of Richard Ito that was filed as an exhibit to Wi-LAN's motion for partial summary judgment of IPR estoppel. (Doc. No. 238.) The Court's analysis and resolution of Wi-LAN's motion for summary judgment does not reference or rely on the Ito declaration. See supra. As such, the Court denies LG's motion to strike the Ito declaration as moot.

   In addition, On October 18, 2019, Wi-LAN filed a motion for leave to conduct certain discovery on subject matter purportedly placed into issue by the Lukas declaration and LG's arguments relying on the Lukas declaration that were presented in LG's opposition to Wi-LAN's motion for summary judgment of IPR. (Doc. No. 268.) The Court has granted Wi-LAN's motion for partial summary judgment of IPR estoppel. As such, the Court denies Wi-LAN's motion for leave to conduct additional discovery on this issue as moot.

the 3GPP LTE Standard, which was publicly released in December 2008.  (Id. at 18.)

A.    Legal Standards Governing Priority Date

"To obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written description in the parent." Anascape, Ltd. v. Nintendo of Am. Inc., 601 F.3d 1333, 1335 (Fed. Cir. 2010); see Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1571 (Fed. Cir. 1997).  Under 35 U.S.C. § 112, the "specification shall contain a written description of the invention . . . ."  To satisfy the written description requirement of § 112, "the description must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'"  Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  Thus, "'the test for sufficiency' of a patent's written description 'is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'"  Centrak, Inc. v. Sonitor Techs., Inc., 915 F.3d 1360, 1365 (Fed. Cir. 2019) (quoting Ariad Pharms., 598 F.3d at 1351).

The Federal Circuit has explained that "the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." Ariad, 598 F.3d at 1351.  The Federal Circuit has further explained that "determining whether a patent complies with the written description requirement will necessarily vary depending on the context.  Specifically, the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology."  Id. (citation omitted).

"'Compliance with the written description requirement is a question of fact, but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party.'"  ScriptPro LLC v. Innovation Assocs., Inc., 833 F.3d 1336, 1340 (Fed. Cir. 2016) (quoting PowerOasis, Inc. v. T–Mobile USA, Inc., 522 F.3d

1299, 1307 (Fed. Cir. 2008)); see also Ariad Pharms., 598 F.3d at 1351 (The written description "inquiry, as we have long held, is a question of fact."); Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1330 (Fed. Cir. 2003) (characterizing the written description inquiry as "fact intensive").

B.  Legal Standards Governing Anticipation

A patent claim is invalid if the claimed invention was "patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."  35 U.S.C. § 102(a).  "For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference."  Therasense, Inc. v. Becton, Dickinson & Co., 593 F.3d 1325, 1332 (Fed. Cir. 2010); see Schering Corp. v. Geneva Pharm., 339 F.3d 1373, 1379 (Fed. Cir. 2003).

"Anticipation, though a question of fact, may be resolved on summary judgment if no genuine issue of material fact exists."  OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc., 701 F.3d 698, 704 (Fed. Cir. 2012).  "Summary judgment is proper if no reasonable jury could find that the patent is not anticipated."  Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc., 522 F.3d 1348, 1357 (Fed. Cir. 2008).  At summary judgment, the Court "must also take into account that invalidity of a patent must be shown by clear and convincing evidence."  Ivera Med. Corp. v. Hospira, Inc., 801 F.3d 1336, 1343 (Fed. Cir. 2015); see Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011).

C.  The '743 Patent

As an initial matter, Wi-LAN argues that the Court should deny LG's motion as to the '743 patent because LG's contention that the '743 patent is anticipated under § 102 by Release 8 of the 3GPP LTE standard is barred by IPR estoppel under 35 U.S.C. § 315(e)(2).  (Doc. No. 240 at 13-14.)  Wi-LAN argues that because LG knew about the 3GPP LTE standard prior to filing its IPR petition as to the '743 patent, LG's anticipation contention based on the 3GPP LTE standard "reasonably could have [been] raised" in LG's IPR petition.  (Id.)

LG's initial invalidity contentions in the prior action identified the 3GPP LTE standard as a prior art reference, and the contentions were served on October 20, 2017, well before the filing of LG's IPR petition on February 22, 2018. (See Doc. No. 187-6, Ex. 4 at 26.) Indeed, in the prior action, on February 2, 2018, also prior to the filing of LG's IPR petition, LG filed a similar motion for summary judgment arguing that the asserted claims of the '743 patent are anticipated by the 4G LTE standard because the claims are not entitled to their claimed priority date. See Wi-LAN Inc. v. LG Electronics, Inc., No. 3:17-cv-00358-BEN-MDD, Docket No. 90 at 1722, 24-25 (S.D. Cal., Feb. 2, 2018) (citing "3GPP TS 36.300 V8.12.0 (2010-03); 3GPP TS 36.331 V8.21.0 (2014-06); 3GPP TS 36.321 V8.12.0 (2012-03); 3GPP TS 36.213 V8.8.0 (2009-09); 3GPP TS 23.203 V8.14.0 (2012-06);" and Wi-LAN's infringement contentions asserting "that products complying with the 3GPP LTE Standards (release 8+) infringe the patents-in-suit"). Further, anticipation under § 102 based on an intervening prior reference and a challenged priority date is a ground that can be raised in an IPR petition. See Thermo Fisher Scientific Inc. v. Regents of University of Cal., No. IPR2018-01347, 2019 WL 318641, at *8 (P.T.A.B. Jan. 22, 2019) (rejecting the patentee's argument that the PTAB cannot make a priority determination during an IPR even in circumstances where that determination "effectively coalesces with a written description analysis of the challenged claims' own specification").

In light of the above, it is clear that LG's contention that Release 8 of the 3GPP LTE standard anticipates the asserted claims of the '743 patent is a ground that LG "reasonably could have raised" in its IPR petition. LG offers no argument to the contrary. (See generally Doc. No. 266.) As such, LG is estopped under § 315(e)(2) from asserting that the '743 patent is invalid based on anticipation by Release 8 of the 3GPP LTE standard. See Trustees of Columbia Univ., 390 F. Supp. 3d at 678 (granting motion for summary judgment of IPR estoppel based on the invalidity grounds at issue being previously identified in invalidity contentions); Polaris, 2019 WL 3824255, at *3 (same); Parallel Networks Licensing, 2017 WL 1045912, at *11-12 (same); Douglas Dynamics, 2017 WL 1382556, at *5. As a result, the Court denies LG's motion for summary judgment that the

18-cv-01577-H-AGS

'743 patent is invalid under § 102 because it is not entitled to its claimed priority date.

### D. Burden of Proof

As a second initial matter, the parties dispute who bears the burden of proving priority date here. LG argues that the patentee bears the burden of proving that it is entitled to its claimed priority date. (Doc. No. 188-1 at 5-6, 12.) In response, Wi-LAN argues that LG must first establish a *prima facie* case of invalidity, and only then does it shift the burden of production to Wi-LAN. (Doc. No. 240 at 2.) Wi-LAN further argues that even if the burden of production shifts, the ultimate burden of persuasion to prove invalidity by clear and convincing evidence remains with LG. (Id. at 3.)

In PowerOasis, Inc. v. T-Mobile USA, Inc., the Federal Circuit explained that the party asserting invalidity under an intervening prior art reference must "show by clear and convincing evidence that the asserted patent is invalid" under that reference. 522 F.3d at 1305. Once the accused infringer "has established a *prima facie* case of invalidity and its burden is met," the burden shifts to the patentee "to come forward with evidence to prove entitlement to claim priority to an earlier filing date." Id. at 1305–06; accord Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1329 (Fed. Cir. 2008).[5] The Federal Circuit has subsequently clarified that this burden shifting shifts only the burden of

---

[5] The Court notes that PowerOasis involved a dispute concerning whether a continuation-in-part patent was entitled to claim priority to the date of the original parent application. See 522 F.3d at 1303–05. In adopting this burden shifting approach, the Federal Circuit in PowerOasis noted:

> Determining the effective filing date each claim in a CIP application is entitled to can be quite complex. Since CIPs generally add new matter, the claims may be fully supported by the parent application or they may rely on the new matter for support. In fact, a CIP could contain different claims entitled to receive different effective filing dates in the same patent. There would be no reason for the PTO to undertake what could be a very time consuming written description analysis simply to pronounce the effective filing date of each claim, absent some dispute over it during prosecution.

Id. at 1305 n.4. The Court notes that the '924 patent is a continuation, not a continuation-in-part, of U.S. Application No. 09/316,518. '924 Patent at (63); cf. Transco Prod. Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555–56 (Fed. Cir. 1994) (explaining the difference between a continuation, a divisional, and a continuation-in-part). Nevertheless, Wi-LAN does not argue that PowerOasis's burden shifting approach does not apply in these circumstances.

production from the accused infringer to the patentee.  See Tech. Licensing, 545 F.3d at 1329; Dynamic Drinkware, LLC v. Nat'l Graphics, Inc., 800 F.3d 1375, 1378–79 (Fed. Cir. 2015) ("[T]he burden of production, or the burden of going forward with evidence, is a shifting burden.").  The burden of persuasion to prove invalidity by clear and convincing evidence never shifts and remains with the accused infringer.  See Tech. Licensing, 545 F.3d at 1329 ("[B]ecause an issued patent is by statute presumed valid, a challenger has the burden of persuasion to show by clear and convincing evidence that the contrary is true. That ultimate burden never shifts . . . ."); Dynamic Drinkware, 800 F.3d at 1378 ("The burden of persuasion . . . never shifts to the patentee."); see, e.g., Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 137677 (Fed. Cir. 2009); see also Microsoft, 564 U.S. at 95.

Here, LG contends that the asserted claims of the '924 patent and the '351 patent are all invalid as anticipated under 35 U.S.C. § 102 by Release 8 of the 3GPP LTE standard. (Doc. No. 188-1 at 18.)  LG explains that because the asserted claims are entitled to a priority date of no earlier than their actual filing dates – October 11, 2012 and May 30, 2014, respectively – the claims are anticipated by Release 8 of the 3GPP LTE standard, which was publicly released in December of 2008.  (Id.)  LG's anticipation argument is based on Wi-LAN's assertion that mobile devices that are compliant with the 3GPP LTE standard infringe the patents-in-suit.  (See Doc. No. 240-1 at 25-26 ¶ 50 ("Wi-LAN has asserted that the fact LG's Accused Products comply with Release 8 of the 3GPP LTE standard is evidence they infringe the patents-in-suit."); Doc. No. 254 at 19 ("Dr. Lomp provides extensive analysis showing that the accused devices' compliance with the LTE Standards means infringement."); Doc. No. 253 at 10 ("all LTE standards infringe"); Doc. No. 207, Ex. 2 Lomp Expert Report ¶¶ 102-111, 114, 256; Doc. No. 1, Compl ¶¶ 13, 27-29, 37, 41, 67.)  This is sufficient to establish a *prima facie* case of invalidity under § 102 as to the asserted claims of the '924 patent and the '351 patent.  See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier."); Los Angeles Biomedical

Research Inst. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co., 849 F.3d 1049, 1069 (Fed. Cir. 2017).

Wi-LAN argues that LG should not be permitted to contend that the 3GPP LTE standard anticipates the patents-in-suit because LG did not assert anticipation under Release 8 of 3GPP LTE standard in its invalidity contentions. (Doc. No. 240 at 13, 20.) In response, LG argues that it is not required to chart intervening prior art references under the Court's Patent Local Rules. (Doc. No. 266 at 6 n.12.)

Under the Court's Patent Local Rules, an accused infringer's invalidity contentions must contain, among other things: (1) "The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious;" and (2) "A chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found." S.D. Cal. Patent L.R. 3.3 (a), (c). In its April 5, 2019 amended invalidity contentions and its July 17, 2019 second amended invalidity contentions in this action, LG identified "[t]he 3GPP LTE Standard" as a §§ 102, 103 prior art reference to the patents-in-suit. (Doc. No. 187-9, Ex. 7 at 33; Doc. No. 187-10, Ex. 8 at 34.) Further, in the contentions, LG specifically contended that the asserted claims of the patents-in-suit are anticipated by the 4G LTE standard, and LG cited to Wi-LAN's amended infringement contentions and LG's motion for summary judgment that was filed in the prior action, which contained the same invalidity and priority date arguments as the present motion. (Doc. No. 187-9 at 5 n.3; Doc. No. 187-10, Ex. 8 at 6 n.4.) Under these particular circumstances, where the anticipation contention is based on an intervening prior art reference and the patentee's own infringement allegations and contentions, and the specific theory of invalidity was already disclosed in a previously filed motion for summary judgment that is cited in the invalidity contentions, LG's July 17, 2019 amended invalidity contentions were sufficient to disclose Release 8 of the 3GPP LTE Standard as an anticipatory reference in compliance with the Court's Patent Local Rules. As such, the Court rejects Wi-LAN's argument.

Wi-LAN also argues that LG has failed to establish a *prima facie* case of anticipation because LG has not satisfied the Vanmoor exception. (Doc. No. 240 at 14, 20.) In support

of this argument, Wi-LAN cites to a district court case holding that: "The <u>Vanmoor</u> exception requires an identity between the accused product and the asserted prior art, at least with respect to the aspects of the product that are accused of infringement." <u>Metaswitch Networks Ltd. v. Genband US LLC</u>, No. 2:14-CV-744-JRG-RSP, 2016 WL 3618831, at *7 (E.D. Tex. Mar. 1, 2016) (citing <u>Vanmoor v. Wal-Mart Stores, Inc.</u>, 201 F.3d 1363, 1366 (Fed. Cir. 2000)). Wi-LAN further argues that LG has failed to present any admissible evidence showing that any accused products were sold before the filing dates of the '924 patent or the '351 patent. (Doc. No. 240 at 14.) Wi-LAN's reliance on the <u>Vanmoor</u> exception is misplaced. Here, LG's intervening anticipatory prior art reference is not one of its own accused products, but the 3GPP LTE standard itself. (Doc. No. 188-1 at 18.) Wi-LAN does not dispute that the 3GPP LTE standard was publicly released in 2008. (Doc. No. 240-1 at 26-27 ¶ 51; Doc. No. 207, Ex. 2 Lomp Expert Report ¶ 108.)

In sum, because LG has established a *prima facie* case of invalidity based on Release 8 of the 3GPP LTE standard, Wi-LAN bears the burden "to come forward with evidence to prove entitlement to claim priority to an earlier filing date." <u>PowerOasis</u>, 522 F.3d at 1305–06. Nevertheless, LG still retains the ultimate burden of persuasion to prove invalidity of the '924 patent and the '351 patent by clear and convincing evidence. <u>See Tech. Licensing</u>, 545 F.3d at 1329; <u>Dynamic Drinkware</u>, 800 F.3d at 1378.

E.    <u>The '924 Patent</u>

LG argues that Wi-LAN cannot establish that the asserted claims of '924 patent are entitled to their claimed priority date because the application to which they claim priority, U.S. Application No. 09/316,518 ("the '518 App."), describes only a fixed, singe-cell system with fixed customer premises equipment. (Doc. No. 188-1 at 6-11.) LG argues that the '518 App. does not disclose "wireless cellular mobile unit[s]" or a "bandwidth on demand wireless cellular communication system." (<u>Id.</u> at 9-11.) In response, Wi-LAN argues that the disclosures in '518 App. are sufficient to support the claims. (Doc. No. 240 at 4-6.)

25

Independent claim 1 of the '924 patent claims: "A method of operating a wireless cellular mobile unit registered with a base station in a bandwidth on demand wireless cellular communication system." '924 Patent at 22:42-44. Independent claim 17 of the '924 patent claims: "A method of allocating uplink (UL) bandwidth on demand in a wireless communication network, wherein a wireless cellular mobile unit is registered with, and communicating with a base station." Id. at 24:19-22.

LG argues that the '518 App. does not disclose a "wireless cellular mobile unit" or a multi-cell wireless cellular communication system. (Doc. No. 188-1 at 9-11.) LG argues that the '518 App. does not describe cellular telephones, wireless cellular mobile units, or any other non-fixed equipment that communicates with a base station. (Id. at 9.) LG notes that the '518 App. never uses the specific term "wireless cellular mobile unit." (Id..) But "'the invention claimed does not have to be described in *ipsis verbis* in order to satisfy the description requirement of § 112.'" Union Oil Co. of Cal. v. Atl. Richfield Co., 208 F.3d 989, 1000 (Fed. Cir. 2000).

In his report, Wi-LAN's validity expert, Dr. Gitlin, opines that the '518 App. contains sufficient disclosures such that a person of ordinary skill would recognize that the inventors possessed the claimed "wireless cellular mobile unit." (Doc. No. 255, Dr. Gitlin Expert Report ¶¶ 1141-45.) In support of this opinion, Dr. Gitlin cites to the following two passages in the '518 App: "1. Field of the Invention [¶] This invention relates to wireless communication systems." (Doc. No. 188-4, Ex. 1 at 1:13-14.) "[A] wireless communication system facilitates two-way communication between a plurality of subscriber radio stations or wireless subscriber radio units (fixed and portable) and a fixed network infrastructure. Exemplary communication systems include mobile cellular telephone systems, personal communication systems (PCS), and cordless telephones." (Id. at 1:19-23.) Dr. Gitlin opines that the '518 App.'s disclosure that the claimed "wireless communication system" can include "portable" subscriber units, including specifically "mobile cellular telephone systems" and "personal communication systems" is sufficient to convey to a person of ordinary skill that the claimed invention could include mobile

cellular phones and personal communication phones. (Doc. No. 255, Dr. Gitlin Expert Report ¶ 1142.) This is sufficient to raise a genuine issue of material fact as to whether the '518 App. discloses a "wireless cellular mobile unit." See Vasudevan Software, Inc. v. MicroStrategy, Inc., 782 F.3d 671, 683 (Fed. Cir. 2015) ("'"As a general rule, summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case.'" (quoting Provenz v. Miller, 102 F.3d 1478, 1490 (9th Cir. 1996))).

LG argues that Dr. Gitlin's reliance on the above passages in the '518 App. are flawed because the second passage comes a portion of the application entitled "Description of Related Art." LG notes that the Court stated in the claim construction order that this "portion of the specification 'is not describing the claimed invention. Rather, the specification is describing prior art.'" (Doc. No. 188-1 at 10 (citing Doc. No. 112 at 10; see also id. at 16 ("Rather, the specification is describing certain prior art systems.")); Doc. No. 266 at 3.) But LG's reliance on this part of the Court's claim construction order is misplaced and fails to appreciate the differing legal standards that are at issue. First, in the cited portion of the claim construction order, the Court was not addressing the passage at issue; rather, the Court addressed a different passage that was contained in the "Description of Related Art" section. (See Doc. No. 112 at 10.)

Second, in that part of the claim construction order, the Court was addressing a proposed claim construction that sought to import a limitation from the passage at issue into the claims. (See Doc. No. 112 at 10.) The Federal Circuit has "warned against importing limitations from the specification into the claims absent a clear disclaimer of claim scope." Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1373 (Fed. Cir. 2007); see Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc., 672 F.3d 1270, 1276 (Fed. Cir. 2012); Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1327 (Fed. Cir. 2012). The Court explained that a description of an exemplary broadband wireless communication system when describing prior art systems does not constitute a clear disclaimer of claim scope. (See Doc. No. 112 at 10.)

In contrast, here, the standard for determining the sufficiency of the '518 App.'s

written description is whether the '518 App.'s disclosure "'reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" Centrak, 915 F.3d at 1365 (quoting Ariad, 598 F.3d at 1351). In this context, a description of various exemplary prior art wireless communication systems could satisfy this standard by conveying to one skilled in the art what could potentially be included within the claimed wireless communication system/network.

LG also argues that the '518 App.'s disclosure of a CPE within a fixed single cell wireless communication system is insufficient to support the asserted claims' wireless cellular mobile units for use with multiple base stations in a mobile multi-cell wireless communication system. (Doc. No. 188-1 at 11.) In response, Wi-LAN argues that LG's argument is based on its flawed premise that the '518 App is limited to a fixed, single-cell system." (Doc. No. 240 at 9.)

Dr. Gitlin opines that a person of ordinary skill would recognize that the '518 App.'s disclosure of a "Customer Premise Equipment" or "CPE" is a non-limiting preferred embodiment of the invention. (Doc. No. 255, Gitlin Expert Report ¶ 1147.) In support of this, Dr. Gitlin cites to a passage in the '518 App. describing its disclosure of a broadband wireless communication system containing a plurality of CPEs as an "exemplary broadband wireless communication system." [6] (Id. (citing Doc. No. 188-4, Ex. 1 at 2:13-14).) Dr. Gitlin further opines that a person of ordinary skill would recognize that a CPE can be a "wireless cellular mobile unit" and supports this opinion with citations to two

---

[6]     In response, Wi-LAN argues that a fixed CPE within a fixed single cell wireless communication system is the only embodiment disclosed in the '518 App. (Doc. No. 266 at 4.) But the Federal Circuit has explained that absent a clear disclaimer, a claimed invention is not limited to a specific preferred embodiment disclosed in the specification even if it is the only embodiment described. See Dealertrack, 674 F.3d at 1327 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."); accord GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1309 (Fed. Cir. 2014); see also Saunders Grp., Inc. v. Comfortrac, Inc., 492 F.3d 1326, 1332 (Fed. Cir. 2007) ("A patent that describes only a single embodiment is not necessarily limited to that embodiment.); Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

patents from the relevant time period.  (Id. ¶ 1148.)

In addition, Dr. Gitlin notes the '518 App.'s disclosure that subscriber units can be "portable" and within a "mobile cellular telephone system."  (Id. at Doc. No. 188-4, Ex. 1 at 21-22.)  Dr. Gitlin further explains that in this passage the '518 App. states that it incorporates by reference a co-pending application that eventually issued as U.S. Patent No. 6,016,311, and that co-pending application expressly discloses multi-cell wireless communication systems.  (Id. ¶ 1149.)

In response, LG argues that a wireless cellular mobile unit is not a CPE and cites to the opinions of its own technical expert.  (Doc. No. 188-1 at 11 n.8 (citing Doc. No. 188-5, Ex. 2 Proctor Invalidity Report ¶ 411); see also Doc. No. 188-5, Ex. 2 Proctor Invalidity Report ¶¶ 400-12.)  But these competing expert opinions at best only create a genuine issue of material fact as to whether the '518 App. discloses a "wireless cellular mobile unit." See Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp., 635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate."); Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1362 (Fed. Cir. 2002) (finding summary judgment inappropriate because "the conflicting allegations of the experts here leave unresolved factual disputes").

Finally, Wi-LAN notes that it was the PTO examiner that amended the claims of the '924 patent to include the specific term "wireless cellular mobile unit."  (Doc. No. 240-25, Ex. X at 359-63.)  This provides further support for the notion that there is at least a genuine issue of material fact as to whether the '518 App. discloses a "wireless cellular mobile unit."[7]  See Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1574–75

---

[7]    LG argues that the examiner's amendments are not relevant because PTO "'examiners do not make priority determinations except where necessary.'"  (Doc. No. 266 at 3-4 n.7 (quoting PowerOasis, 522 F.3d at 1305).)  LG is correct that PTO examiners generally do not make priority determinations during prosecution, see PowerOasis, 522 F.3d at 1305, but examiners do evaluate whether proposed claims satisfy the written description requirement of § 112.  See MPEP § 2163; see, e.g., Hyatt v. Dudas, 492 F.3d 1365,

(Fed. Cir. 1992).  As such, the Court denies LG's motion for summary judgment that the asserted claims of the '924 patent are not entitled to their claimed priority date and, therefore, are invalid under § 102.[8]

## F.    The '351 Patent

LG argues that Wi-LAN cannot establish that the asserted claims of the '351 patent are entitled to their claimed priority date because the application to which they claim priority, Canadian Application No. 2,393,373 ("the '373 App."), does not disclose a "traffic shaping rate" as that term is used by the limitations of the asserted claims of the '351 patent. (Doc. No. 188-1 at 12-18.)  In response, Wi-LAN argues that LG's priority date arguments as to the '351 patent have already been rejected by the PTAB in the related IPR proceedings.  (Doc. No. 240 at 14-16.)  Wi-LAN further argues that its validity expert, Dr. Gitlin, has provided a sufficient analysis showing that there is ample support for every limitation in the '351 patent in the '373 App.  (Id. at 14, 16-20.)

Independent claim 7 of the '351 patent recites:  "A mobile device . . . comprising: a link controller operable to:  operate a plurality of logical channel queues for transmitting data, each of the logical channel queues is capable of being associated with a priority and a traffic shaping rate."  '351 Patent at 14:31-37.  In the Court's claim construction order, the Court construed the term "traffic shaping rate" as "a limitation on the amount of data transmission capacity allocated to a particular logical channel queue, where the rate is used to regulate traffic flow on the network."  (Doc. No. 112 at 32.)

First, LG argues that the '373 App. does not disclose a "traffic shaping rate."  (Doc.

---

1369–71 (Fed. Cir. 2007).  At the hearing on the parties' motions for summary judgment, LG asserted that the disclosures in the '924 patent's specification are equivalent to the disclosures in the '518 App.

[8]       In addition, the Court notes even if LG was not estopped under § 315(e)(2) from arguing that the '743 patent is invalid under § 102 in light of the 3GPP LTE standard, LG would still not be entitled to summary judgment on this issue with respect to the '743 patent.  LG's arguments regarding the priority date and validity of the '743 patent are coextensive with its arguments regarding the priority date and validity of the '924 patent.  (See Doc. No. 188-1 at 6-12.)  As such, even assuming estoppel did not apply, LG's motion for summary judgment as to the '743 patent would still be denied for the same reasons that the Court denies LG's motion for summary judgment as to the '924 patent.

No. 188-1 at 12-13.)  LG notes that the specific term "traffic shaping rate" does not appear anywhere in the '373 App.  (Id. at 12.)  But "'the invention claimed does not have to be described in *ipsis verbis* in order to satisfy the description requirement of § 112.'"  Union Oil, 208 F.3d at 1000.

In his report, Wi-LAN's validity expert, Dr. Gitlin, opines that the '373 App. explicitly teaches traffic shaping by limiting the data rate (*i.e.*, a "traffic shaping rate"). (Doc. No. 255, Gitlin Expert Report ¶ 1172.)  In support of this opinion, Dr. Gitlin cites to the follow portion of the '351 patent's specification:

> Further, traffic shapers can be implemented and configured on a per logical channel basis.  This allows, for example, voice telephony data to be transferred over link 40 as necessary, while other data types can be data rate limited according to parameters defined by the network operator.  Thus, a telephony call can be conducted unimpeded while a file transfer or other large data transfer can be subject to a leaky bucket, or other traffic shaping process.

(Doc. No. 188-7, Ex. 7 at 17:3-7.)  Dr. Gitlin opines that a person of ordinary skill in the art would understand the term "traffic shaping rate" from this disclosure even though the specification never expressly uses the exact term "traffic shaping rate."  (Doc. No. 255, Gitlin Expert Report ¶ 1172).  In addition, there is testimony in the record from Wi-LAN's technical expert, Dr. Lomp, stating that traffic shaping was known to those of ordinary skill in the art in July 2002, and citing to a textbook stating that the leaky bucket traffic shaping algorithm, referred to in the above passage, was known since at least 1986.  (Doc. No. 240-22, Ex. U at 13.)  This evidence is sufficient to raise a genuine issue of material fact as to whether the '373 App. discloses a "traffic shaping rate."  See Vasudevan, 782 F.3d at 683; Provenz, 102 F.3d at 1490.

Second, LG argues that the '373 App. does not disclose a link controller operating a plurality of logical channel queues, where "each of the logical channel queues is capable of being associated with . . . a traffic shaping rate."  (Doc. No. 188-1 at 14.)  In his report, Dr. Gitlin notes that the '351 patent's specification expressly discloses that "RLC 140 performs the prioritization, segmentation and, if desired, traffic shaping of data packets for transmission over the available radio resources."  (Doc. No. 255, Gitlin Expert Report ¶

1173 (quoting '351 Patent at 9:11-13); see also Doc. No. 188-7, Ex. 7 at 11:17-18.) "RLC" stands for "Radio Link Controller." (Doc. No. 188-7, Ex. 7 at 10:5-6.) Dr. Gitlin further explains that the '373 App. expressly discloses that "traffic shapers can be implemented and configured on a per logical channel basis." (Doc. No. 255, Gitlin Expert Report ¶ 1173 (citing Doc. No. 188-7, Ex. 7 at 17:3-4).). This is sufficient to raise a genuine issue of material fact as to whether the '373 App. discloses the limitation at issue. See Vasudevan, 782 F.3d at 683; Provenz, 102 F.3d at 1490.

Third, LG argues that the '373 App. does not disclose a link controller performing the claimed steps of "select[ing]," "allocate[ing]," and "repeatedly consider[ing]" using a "traffic shaping rate." (Doc. No. 188-1 at 14-18.) In his report, Dr. Gitlin, consistent with the PTAB's analysis, opines that the method recited in claim 1 of the '351 patent "'is merely the method of Figure 5 in which the disclosed 'optional' traffic shaping is performed in the first iteration.'" (Doc. No. 255, Gitlin Expert Report ¶ 1174-76 (quoting Doc. No. 240-22, Ex. U at 20); see Doc. No. 188-7, Ex. 7 at fig. 5). Dr. Gitlin opines, "[t]hus, Figure 5 read in conjunction with the other disclosures of the '373 App. and '351 Patent shows a flow chart that performs traffic shaping as per the claims of the '351 Patent." (Doc. No. 255, Gitlin Expert Report ¶¶ 1174.) This is sufficient to raise a genuine issue of material fact as to whether the '373 App. discloses the "select[ing]," "allocate[ing]," and "repeatedly consider[ing]" limitations. See Vasudevan, 782 F.3d at 683; Provenz, 102 F.3d at 1490.

Fourth, LG argues that Dr. Gitlin incorrectly assumed that LG bears the burden of proving that the claims are not entitled to the claimed priority date, and, therefore, his analysis is flawed because he fails to address every limitation in the asserted claims. (Doc. No. 188-1 at 12.) Here, Wi-LAN bears the burden to come forward with evidence to prove entitlement to claim priority to an earlier filing date. See supra. Nevertheless, Wi-LAN's expert, Dr. Gitlin, does opine that the '373 App. discloses every limitation in the asserted claims. In his report, Dr. Gitlin, consistent with the PTAB's analysis, affirmatively opines that the method recited in claim 1 of the '351 patent "'is merely the method of Figure 5 in

which the disclosed 'optional' traffic shaping is performed in the first iteration.'" (Doc. No. 255, Gitlin Expert Report ¶¶ 1174-76 (quoting Doc. No. 240-22, Ex. U at 20). Dr. Gitlin supports this opinion with citations to the '373 App. itself and citations to the PTAB's detailed analysis of the disclosures contained in '373 App. (See id. ¶¶ 1168-76.) In addition, Dr. Gitlin incorporates by reference into his analysis 15 pages of claim charts showing written description support for the '351 patent's claims. (See id. ¶ 1171, Ex. C.) As such, the Court rejects LG's argument.

Finally, the Court notes that in the denying LG's IPR petition, the PTAB rejected LG's argument that the asserted claims of '351 patent are not entitled to their claimed priority date because the '373 App. does not disclose a "traffic shaping rate" or any method using a "traffic shaping rate." (Doc. No. 240-22, Ex. U at 9-20.) The Court recognizes that the PTAB utilizes a different standard of review in deciding whether to grant IPR petitions than district courts utilize in deciding motions for summary judgment.[9] Nevertheless, the Court find the PTAB's analysis of this issue well-reasoned, persuasive, and consistent with the Court's conclusion that LG is not entitled to summary judgment on this issue. As such, the Court denies LG's motion for summary judgment that the asserted claims of the '351 patent are not entitled to their claimed priority date and, therefore, are invalid under § 102.

///

///

///

---

[9] The PTAB may only institute an IPR if the petition and the response to the petition "shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). The Court notes that this is a more lenient standard than the standard for establishing entitlement to summary judgment. Compare 35 U.S.C. § 314(a) with Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322.

## Conclusion

For the reasons above, the Court:

1.     Grants Wi-LAN's motion for partial summary judgment of LG's obviousness defense based on IPR estoppel under 35 U.S.C. § 315(e)(2);

2.     Denies LG's motion for summary judgment of priority date and for summary judgment of invalidity under 35 U.S.C. § 102;

3.     Denies as moot LG's motion to strike the Ito declaration; and

4.     Denies as moot Wi-LAN's motion for leave to conduct additional discovery. Specifically, the Court grants summary judgment in favor of Wi-LAN on LG's defense and counterclaim of invalidity of the '743 patent on the grounds of obviousness under the "Chuah and Kari," "DOCSIS and Eng," "Fischer and Sigle," "Karol and Sigle," and "Fischer and Karol and Sigle" obviousness combinations and anticipation by Release 8 of the 3GPP LTE standard.

**IT IS SO ORDERED.**

DATED: November 4, 2019

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

18-cv-01577-H-AGS